Shapiro *v.* Mortgage B. & L. Assn., Appellant.

Argued October 8, 1931.

Before Trexler,
P. J., Keller, Linn, Gawthrop, Cunningham and
Baldrige, JJ.

*Joseph H. Sundheim* of *Bernheimer & Sundheim,*
and with him *Herbert M. Levy,* for appellant.

*Henry Saxe,* for appellee.

Opinion by Cunningham, J., January 28, 1932:

One of the items involved in a settlement made at
Commonwealth Title and Trust Company on March 23,
1928, was the payment by plaintiff to defendant of
the balance due on a mortgage upon his property in
which defendant was the mortgagee. Defendant's
secretary presented a statement claiming $64,698 as
such balance; this amount included interest up to
April 12, 1928, the date of the "next monthly meet-
ing of the directors" of defendant. Plaintiff, con-
tending that he had a right to "repay a loan at any
time," objected to paying interest beyond the date

upon which defendant would receive its money. Upon the statement of counsel for defendant that the only thing for plaintiff to do was to "pay it under protest" and come to the next meeting and "we will see whether we can straighten it out for you," plaintiff paid, and defendant received in cash on March 26th, the full balance claimed. Plaintiff attended the monthly meetings in April and May and demanded the return to him of $368.33, being seventeen days' interest (March 26th to April 12th) at $21.66⅔ per day; upon defendant's refusal, plaintiff brought this action in the court below to recover that amount.

The trial judge, holding, and we think correctly, that the case turned upon the construction of defendant's by-laws in the light of the provisions of section 4 of the Act of April 10, 1879, P. L. 16, refused its point for binding instructions and directed a verdict for plaintiff for $368.33, with interest. Upon denial of defendant's motions for judgment n. o. v. and for a new trial and the entering of judgment upon the verdict, it took this appeal.

A brief recital of the circumstances, as they are shown by the pleadings and testimony, will indicate the grounds for the respective contentions of the parties. In 1924 Nathan Raidman, being the owner of certain real estate at the corner of Forty-ninth and Locust Streets, Philadelphia, borrowed $100,000 from the defendant association and as security for the repayment of the loan gave it his bond secured by a mortgage on the premises and pledged to it his seven hundred shares of its stock of the par value of $200 each. In March, 1926, Raidman conveyed the premises to Joseph Shapiro, plaintiff herein, under and subject to the mortgage, and assigned to him all his right, title and interest in the shares. On March 10, 1928, plaintiff, being desirous of refinancing his real estate investment, asked defendant's secretary for a statement

of the amount of cash necessary to procure a satisfaction of its mortgage; plaintiff stated he could not then advise the secretary of the exact date for the settlement but expected to be ready to pay off the mortgage by March 21st or 22nd. The secretary informed plaintiff that under defendant's by-laws the mortgage could be paid only at a regular monthly meeting of the association; that the next monthly meeting would be held April 12th and interest must be paid to that date. A statement was then furnished plaintiff showing the withdrawal value of the shares and that the balance, including interest to April 12th, would be $64,698. When plaintiff protested against the inclusion of interest beyond the date upon which defendant would actually receive its money the secretary stated, in effect, that any difference would be adjusted and referred him to counsel for defendant, with the result above stated. Under date of March 21, 1928, plaintiff executed a power of attorney to the secretary to transfer the shares back to the association and it received $64,698 in cash on March 26th.

We agree with the conclusion of the court below that the effect of the statements made to plaintiff by defendant's secretary and counsel was merely that defendant "would make a proper and legal adjustment," i. e., refund the excess interest if the association was not legally entitled to retain it. Upon the controlling question of law—the construction of the by-law and statute—we adopt these excerpts from the opinion of the learned trial judge, Finletter, P. J., filed in support of the denial by the court below of defendant's motions:

"The dispute arose out of the interpretation of a by-law of the defendant; the latter taking the position that payments of mortgage loans may be made only at the monthly meetings of the association, while plaintiff contends the by-law has no application to

debtors of the association. Defendant's rejoinder is that plaintiff, besides being a debtor, is a stockholder, and in that capacity is bound by the by-law. In reply to this plaintiff cites the Act of April 10, 1879. ......

"What were the rights of the parties under the by-law and statute? The by-law is as follows: 'Sec. 4. ...... All payments of any kind and for any purpose, excepting only real estate examination fees and fees to be paid to the secretary for transfers of stock and for issuing duplicate stock certificates, as hereinafter provided for, must be made at the regular monthly meeting of the directors of the association, and no payments made at any other time or place ...... shall be considered valid or binding upon the association, any law, usage or custom to the contrary notwithstanding. ...... '

"The statute (Act April 10, 1879, P. L. 16, Section 4) provides: 'A borrower may repay a loan at any time, and in case of the repayment thereof before the maturity of the shares pledged for said loan, there shall be refunded to such borrower (if the premiums, bonus or interest shall have been deducted in advance) such proportions of the premiums, bonus or advance interest bid, as the by-laws may determine; provided, That in no case shall the association retain more than one one-hundredth of said premiums or bonus for each calendar month that has expired since the date of the meeting upon which the loan was made, or if interest in advance, it shall retain only the interest due on the loan up to the time of settlement; And further provided, That such borrower shall receive the withdrawing value of the shares pledged for said loan, and the shares shall revert back to the association.'

"The by-law must be interpreted as a whole. The phrase 'all payments of any kind' must not be separated from its context. Approached in this manner, the by-law evidently refers to payments made by stock-

holders as stockholders. It cannot be taken literally so as to include payments by debtors because these are regulated by the contracts between the parties and by the statute. The former may, and the latter expressly does, permit payments to be made at any time. The by-law regulates the issuance of shares, and payments made on them, of dues, fineŝ, earnings of the association, transfers of stock, issuing duplicate certificates. Against this is the reference to real estate examination fees, and the general phrase we have referred to. The minute detailing of the classes of payments must be taken as limiting the general words, especially since it would have been easy to refer to payments of mortgage debts, with which the association was constantly dealing; and especially also since the statute expressly provides that borrowers may pay at any time.

"It is argued that as a stockholder plaintiff is bound by the by-law. But both he and the association are bound by the statute and there is no waiver of the statute in the mortgage. In Louchheim v. Somerset Building and Loan Association, 211 Pa. 499, payment of dues was made by a stockholder to a person not authorized to receive them. While it was held that the association would not ordinarily be bound by such payments, nevertheless it would be if, by a long course of conduct, it had ratified the irregular agent's authority. So in the instant case, where the money was paid to the proper person, but at a time irregular under the by-laws, the association [might not have been] bound if it were not for the condition attached to the payment by the secretary and counsel of the association that the interest would be adjusted. The association by its receipt of the money paid under this condition ratified it, and must perform it.

"The by-law is in conflict with the statute and must give way: Adams v. Union National S. & L. Assn., 55

Ind. Appellate Ct. 676. It was there said: 'The statute under consideration was passed with the evident purpose of permitting the borrowing member to pay his debt at any time without notice ...... Any plan adopted by the association to prevent the payment of loans at any time would not only be in direct conflict with the statute, but against the whole theory and policy of the law.' [The by-law involved in that case required six months' notice of intention to pay.]

"The defendant also argues that the payment made by plaintiff was not of money due on his own obligation, but on that of the original mortgagor. But the plaintiff as grantee of the land from the original mortgagor, 'under and subject' to the mortgage, was himself bound to protect the grantor (the original mortgagor) against loss upon the mortgage: Mays Estate, 218 Pa. 64.

"And defendant argues that plaintiff's payment was voluntary, and that his allegation that it was under protest does not give him a right to recover it, citing Harvey v. Girard Bank, 119 Pa. 212, to the effect that a voluntary payment cannot be recovered back, unless made under compulsion. The trouble with this argument is that the payment was not merely voluntary [i. e., not coerced by compulsory process] and under protest, but was made upon the promise of defendant to adjust the interest at the meeting. In other words it was a conditional payment."

Further discussion is unnecessary; the excerpts we have quoted show that the court below was fully justified in its action and the assignments of error are accordingly overruled.

Judgment affirmed.