BRUNOT, J.
 

 Relator became a shareholder and debtor of the respondent homestead association, to the amount of $15,500. The indebtedness was secured by a vendor’s lien and mortgage on the property described in the application of relator herein for writs of certiorari, mandamus, and prohibition. After reducing the sum of the loan to $12,388.58, relator failed to meet the payments, as stipulated in the mortgage, and respondent proceeded via ex-ecutiva to enforce the payment of that sum, together with interest thereon at the rate of $80.60 per month from June 1, 1931, until paid, and 10 per cent, on the aggregate of said principal and interest, as attorneys’ fees. The proceedings, in every respect, were regular, and the mortgaged property was seized and advertised for sale.
 

 Pending the sale relator secured a preliminary injunction restraining the respondent from proceeding with the sale. Relator’s application for a preliminary injunction was based upon a provision of the act of mortgage which we here quote:
 

 “If at any time before the value of his stock shall be equal to his indebtedness, the said purchaser should desire to pay, settle and cancel said indebtedness, he shall have the right to surrender to the Association, in part payment of such indebtedness, a't their cash value, the shares herein pledged,
 
 and
 
 
 *407
 

 any unpledged, shares in this Association,
 
 provided he pay cash the balance of such indebtedness, and then it shall be the duty of the President or Vice President of said Association to cancel said stock and to give and render to said purchaser a proper receipt and acquittance, as well as to surrender to him the evidence of such indebtedness.” (Italics by the court.)
 

 Relator purchased, at a substantial discount, a number of full paid unpledged shares of stock of the respondent association, which, together with his pledged stock and $572.18 in cash, equaled the sum of his indebtedness to the association, and made a tender thereof to the respondent association in full payment of his indebtedness to it. The association refused to accept the tender, instituted foreclosure proceedings, and relator applied for and obtained the preliminary injunction mentioned supra.
 

 Respondent association excepted to the petition for injunction upon the ground that it did not disclose a right or cause of action against it, and, reserving the benefit of its exceptions, it answered each article of the petition separately and articulately. The case was heard and the court rendered a judgment recalling the writ for and vacating the preliminary injunction; refusing a permanent injunction; ordering the civil sheriff to proceed with the execution of the writ of executory process; and taxing the relator with the costs of this proceeding. Relator applied to this court for writs of review, mandamus, and prohibition, and there is attached to his application the written assent of respondent to the issuance of a rule nisi. The rulé issued, the record has been sent up, the trial judge and respondent homestead association have filed returns, and the matter has been submitted for review.
 

 An unusual interest in the decision of this case is manifested by many prominent attorneys of the Orleans bar, which is shared in by the Attorney General of the state and the state bank examiner and supervisor of homestead building and loan associations.
 

 In addition to the original briefs of the litigants, the respondent has filed a reply brief, and attorneys, including the Attorney General, have, as amici curios, appeared both for and against the granting of the writs applied for by the relator. All of the briefs have been helpful to the court in reaching its conclusion.
 

 The question presented for decision is a simple one, viz. whether or not, when there is a waiting withdrawal list, a debtor of a homestead building and loan association can liquidate his indebtedness to the association otherwise than by payment, in cash, or by tender, at its then value, of his pledged stock In the association, and by the payment of the difference between that value and the sum of the indebtedness in cash.
 

 At the outset we are impressed with the fact that a homestead building and loan association cannot validly enter into a contract with one of its members that is in conflict with the statute creating, regulating-,, and defining the rights, powers, and privileges of homestead associations. The pertinent part of section 11 of Act No. 120 of 1902 is as follows:
 

 “Be it further enacted, etc., That a borrower may repay his loan at any time as-provided in the act of incorporation or bylaws, but no loan shall be cancelled unless
 
 *409
 
 all the fines, interest and premiums up to date of cancellation only, together with the sum actually borrowed, less the withdrawal value of the stock pledged shall be fully paid.”
 

 In our opinion, the most reasonable interpretation of the section quoted is that a borrower can liquidate his indebtedness to a building and loan association only by the payment of the sum due, in cash, less the then withdrawal value of his pledged stock in the association. Counsel for relator say: “The withdrawal value of stock in a building and loan association is always par.”
 

 Act No. 280 of 1916 amends section 11 of Act No. 120 of 1902. Section 7 of the amending statute definitely fixes the withdrawal value of the stock in a homestead association, and 'the order in which withdrawals are paid. We •quote from the section the following:
 

 “Be it further enacted, etc., That a member may withdraw his shares or credits thereon at any time by giving written notice of such intention and shall then be entitled to receive the amount paid in by him, and such proportion of the profits as the act of incorporation or by-laws may prescribe, less all fines, charges, expenses and losses accrued or contingent to the time of notice of withdrawal as the board of directors may determine.
 

 “Each association shall keep a register of notices of withdrawal in the. order in which they are filed, giving dates of notices and amounts to be withdrawn, and shall pay the ■same in the order in which such notices of intention to withdraw were filed.”
 

 Relator purchased full paid stock in the association from nonborrowers. By the purchase he acquired no greater right with respect to this stock than his vendors could enforce, and their enforceable rights are clearly fixed in the provisions of law we have quoted. To hold otherwise would subordinate the rights of• nonborrowing stockholders and creditors of the association to those -of its borrowing members, to the great prejudice of the former and possible liquidation of the association. Such a ruling would be in conflict with the well-recognized principle that the liability of the capital and assets of every corporation is, first, to meet the demands of its creditors. The rights of its stockholders are residuary.
 

 It is shown that, when this suit was filed, there was a large number of applications on the withdrawal register of the respondent association. These applicants followed the procedure prescribed by law for the withdrawal of membership in the association. Wo are of the opinion that the only way in which full paid unpledged stock in a Louisiana homestead building and loan association, as long as there is an unsatisfied list of withdrawals on the association’s register, can be surrendered and payment thereof enforced, is by giving the notice and haring the application, as required by section 11 of Act No. 120 of 1902, placed on the association’s withdrawal list, for payment in due course.
 

 The identical question which we are now considering was propounded to the Attorney General of this state by Mr. Brock, the bank examiner, last September, and we think Mr. W. H. Thompson, Assistant Attorney General, answered it correctly. He said:
 

 “The opinion of this department that a homestead which has a heavy withdrawal
 
 *411
 
 list, and this opinion is restricted to such classes of homesteads, would be unauthorized to permit payment except as provided by section 11 of Act No. 120 of 1902.”
 

 Counsel, in their several briefs, have cited a number of cases and have quoted, at length, from some of them.
 

 Relator cites a line of authorities holding that, where there is an irreconcilable conflict between a homestead association’s express agreements and its by-laws, the agreement prevails. We fail to see the application of these decisions to the facts of this case. There is no intimation in them that the agreement was violative of the statute creating the association and defining its powers. The other authorities hold that, where a contract has been executed by a corporation, and has been fully performed by either of the parties to it, neither of the parties will be permitted to say that the contract was not within the power of the corporation. In all of these cases there had been an actual and full' performance of the contract, not -a mere tender of performance, as the record discloses is a fact of this case. Until the contract is fully and actually performed, the principle announced in those cases does not apply.
 

 We have summarized the holdings of both lines of authorities cited' by relator rather than to review each case separately, believing that to do otherwise would serve no useful purpose.
 

 Eor the reasons stated, the rule nisi issued herein is recalled and vacated, and the relator’s application for writs of certiorari, mandamus, and prohibition is denied at his cost.
 

 ST. PAUL, J., takes no part.