Bevxs, J.
 

 On motion Paul A. Warner, Superintendent of Building and Loan Associations for the state of Ohio, was made party defendant herein and has filed a brief. He makes the single point that this court no longer has jurisdiction.
 

 Section 3 of the Eikenberry Act (Amended House Bill 263, passed by the 90th General Assembly, 115 Ohio Laws, 18) provides that: “This act shall apply to all actions pending at the effective date of this act, and no court in which any action is then pending shall grant any remedy or relief or make any order therein which is prohibited by, or inconsistent with this act.”
 

 Section 687-1, General Code (115 Ohio Laws, 4), provides that when the Superintendent of Building and Loan Associations takes possession of the business and property of an association, he shall post a notice on the door; and Section 687-3, General Code (115 Ohio laws, 5), provides that: “Sueh’posting shall also operate as a bar to any attachment, garnishment, execution or other legal proceedings against such building and loan association, or its assets and property, or its liabilities.”
 

 The superintendent argues that Amended House Bill 263 (115 Ohio Laws, 3) is legislation remedial in its nature; that it expressly affects pending actions and proceedings; and that parties have no vested right to appeals or writs of error from one court to another.
 

 So far as proceedings in this court are concerned, however, the contention may be quickly disposed of. Article IV, Section 2 of the Constitution of Ohio, provides :
 

 “In cases of public or great general interest the supreme court may, within such limitation of time as may be prescribed by law, direct any court of appeals
 
 *480
 
 to certify its record to the supreme court, and may review, and affirm, modify or reverse the judgment of the court of appeals.”
 

 This cause had been certified into this court before the passage of the Eikenberry Act. That act can not divest this court of a jurisdiction conferred by the constitution.
 
 State
 
 v.
 
 Mansfield,
 
 89 Ohio St., 20, 104 N. E., 1001;
 
 Schario
 
 v.
 
 State,
 
 105 Ohio St., 535, 138 N. E., 63. What the effect of this legislation may be upon actions or proceedings pending in other courts we are not now called upon to determine.
 

 We come then to the merits of the case. In the Court of Common Pleas the plaintiff asked for “money, appointment of a receiver and equitable relief.” The court gave judgment for $18,929.24. No other relief was awarded.
 

 Her pleadings alleged that she was a depositor, and she asked judgment on the ground that, as such, she was a creditor.
 

 The evidence makes it clear, however, that the defendant company had no provision in its regulations for deposits, and had never received deposits except from other building and loan associations. Its members were all stockholders. The pass books received by the plaintiff, and the subscription cards signed by her, showed that, in form at least, her relation to the defendant company was that of stockholder and not that of depositor.
 

 Her claim of trickery or fraud on the part of the defendant is not borne out by the record. The trial court said:
 

 “Many claims are asserted by the plaintiff of fraud and deceit on the part of the defendant and its officers with reference to her accounts and the dealings with her, but none of these have impressed the court. Apparently, she was treated as every other customer was up until the time of filing her withdrawal notices, and since that time has been treated the same as all
 
 *481
 
 other members who have sought to withdraw by filing such notices.”
 

 We concur in this finding.
 

 Assuming, then, that the plaintiff became and continued to be a stockholder, at least until the time when she filed her sixty day notices of withdrawal, was she legally entitled to receive the full amount standing to her credit with the company upon the expiration of the sixty day period? -
 

 Section 9651, General Code, provides:
 

 “To permit members to withdraw all or part of their stock deposits, at such times, and upon such terms, as the constitution and by-laws provide. Any member, however, who withdraws his entire stock deposit, or whose stock has matured, shall be entitled to receive all dues paid in and dividends declared thereon, less all fines or other assessments, and less the pro rata share of all losses, if any have occurred.”
 

 We must look then to the pertinent legislation of the company, which we find in Section 17 of the by-laws quoted
 
 supra.
 

 When Tillie Fredrick became a member of the association in 1916, Section 17 in its original form was in force and obviously she was bound by its terms. Is she bound by the amendment (indicated by italics) adopted by the board of directors in November, 1929? She contends that this amendment was never legally adopted because notice was not given to the stockholders.
 

 Article V of the constitution of the company, in force during the entire period of her membership, provides that:
 

 “Any person subscribing for, or becoming the owner by transfer or otherwise, either in his own name or as trustee for another or others, of one or more shares of the capital stock of this company, shall become a member thereof, and as such shall be entitled to all the benefits and privileges, and subject to all the duties
 
 *482
 
 and liabilities of membership as provided by law and prescribed in this constitution and the by-laws of the Company.”
 

 Article S provides:
 

 “The board of directors may make, amend and repeal by-laws, and adopt rules and regulations for the proper conduct of the business of the Company.”
 

 Section 26 of the by-laws provides:
 

 “These by-laws may be amended at any regular meeting of the Board of Directors, by a two-thirds vote of the members thereof, but all proposals to amend the same shall be made in writing at a regular meeting of the board at least one month before action is taken thereon.”
 

 There was at least one annual stockholders’ meeting between the time the amendment of Section 17 was adopted and the time the plaintiff made demand for her money, at which she, and any other members dissatisfied with the changed by-law, might have made an effort to change the personnel of the board. None was made.
 

 All of the steps required for the adoption of the amendment appear to have been regularly taken, and the amendment was duly approved by the Superintendent of Building and Loan Associations of the state. We must hold, therefore, that the plaintiff was bound by the amendment of Section 17.
 

 Section 17, as amended, plainly contemplates two sets of circumstances: first, a normal cash position in which members might safely be permitted to withdraw their interests upon sixty days notice; second, a cash position in which monthly payments upon the principal of outstanding mortgages are less than the applications for withdrawals. In the latter circumstances the right to withdraw is conditional upon two things: (a) the numerical order of filing the applications; (b) the judgment of the board of directors.
 

 The plaintiff’s brief proceeds upon the theory that
 
 *483
 
 after the lapse of the sixty day period of notice, her right to withdraw became absolute, and that she thereupon became a creditor of the company. The authorities cited assume a perfected right to withdraw.
 

 But the facts upon which such an absolute right might be predicated did not exist at any time after the plaintiff’s first demand was made. A tabulation contained in the plaintiff’s brief shows that during the twenty-four months preceding the trial of this case in the Common Pleas Court the receipts from principal payments on mortgages totaled $433,031.61, and the total of applications for withdrawal was $1,861,900.00. According to this tabulation, in only seven out of the twenty-four individual months was there an excess of payments over applications, and at all times during the two-year period the total of applications far exceeded the total of mortgage payments. During the months beginning with June 1930, at the end of which the plaintiff’s demand was made, the payments totaled $169,135.04 and the withdrawal demands $243,-900.00.
 

 Plainly, therefore, under the terms of the by-law upon which the plaintiff’s claim must rest, her right to the return of her money was subject to the condition that her application be paid only in its numerical order, and then only when, in the judgment of the board, payment could' properly be made. It is undisputed that there were more than sixty applications for withdrawal ahead of hers and that none of them has ever been paid. The case of
 
 McKinney
 
 v.
 
 Order of United Commercial Travelers of America,
 
 124 Ohio St., 139, is not in point.
 

 The plaintiff seeks, however, to avoid the force of this conclusion by the assertion that the officers of the association made large payments to other stockholders who did not file applications for withdrawal. She counters the claim of the defendant, that it was legally bound to pay off the loans it had made from banks and
 
 *484
 
 others before it could take care of the withdrawals of stockholders, by saying that the proceeds of such loans were used to pay off favored persons, and that this practice was an unlawful discrimination against her.
 

 It is not disputed that partial payments to those who did not seek totally to withdraw from the association were made in an aggregate amount that was large. The plaintiff, herself, received more than $500.00, as a dividend. Whether she received her fair proportion of such payments we have not the means of determining. The Court of Appeals found that she had an equity in this respect and remanded the cause for its determination. In this we concur.
 

 The Court of Appeals found likewise that she was entitled to share in such dividends as were declared after the date when she filed her notice of withdrawal. In our opinion the provision in Section 17 of the bylaws that “the right to dividends shall cease upon such notice being given” applies only when the financial condition of the company permits the return of his payments to the withdrawing member at the conclusion of the sixty day period. If the company complies promptly with the stockholder’s request to terminate his membership and to withdraw his money, there can be no inequity in terminating his right to dividends. But if, in their discretion, the directors refuse to permit a member to withdraw from the company, or to have his money, his right to dividends persists as an incident to his continued ownership of stock.
 

 For the foregoing reasons, we find that the judgment of the Court of Appeals should be affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias and Zimmerman, JJ., concur.
 

 Weygandt, C. J., Stephenson and Wilkin, JJ., not participating.