IDA ROCKER, PLAINTIFF, v. CARDINAL BUILDING AND LOAN ASSOCIATION OF NEWARK, DEFENDANT.

Decided April 30, 1935.

For the plaintiff, *John J. Stamler.*

For the defendant, *Harold Simandl* (*John Warren,* of counsel).

CLEARY, S. C. C.   Plaintiff is a member of the defendant association and as such, the holder of five so-called "prepaid," really "paid-up" shares of the defendant association, which

shares are now known as "income" shares. *Pamph. L.* 1932, *ch.* 91; *N. J. Stat. Serv.* 1932, § 27-R (73), further amended *Pamph. L.* 1935, *ch.* 59; *N. J. Stat. Serv.* 1935, § 27-R (73). The said shares were issued to the plaintiff April 10th, 1928.

A copy of plaintiff's certificate of shares is annexed to the complaint and reads as follows:

"This is to certify, That Ida Rocker is entitled to Five Shares of stock of the Powerful Building and Loan Association of Newark, New Jersey, transferable in person or by attorney only on the books of the Association upon surrender of this Certificate.

The maturity value of these shares has been fully paid. An annual profit of six per cent per annum is guaranteed on these shares in lieu of all other profits, payable semi-annually from July 10th, 1928. These shares may be redeemed by this Association at any time on thirty days written notice, and payment of the maturity value thereof, with such guaranteed profits to the date of redemption, and the holder thereof have the right to withdraw these shares at such maturity value and guaranteed profit to date of withdrawal upon giving 30 days written notice to this Association."

The complaint alleges that the name of the defendant association was duly changed from Powerful Building and Loan Association to Cardinal Building and Loan Association.

It is alleged in the complaint that on June 1st, 1930, plaintiff filed with the defendant association her written notice of withdrawal and that payment thereof has been postponed by the defendant association for more than six months and that same has not as yet been paid.

The complaint sets forth that on the date of filing the said application for withdrawal, and at the expiration of six months thereafter, sections 49, 52, 73 and 74 of "An act concerning building and loan associations (Revision of 1925)," being *Pamph. L.* 1925, *ch.* 65, were in force.

Section 52 of the said Revision provides as follows:

"52. Payment of withdrawals.

Withdrawals from any such association shall be paid in the order in which the notices thereof shall have been received,

but not more than one-half of the receipts of any one month shall be required to be used for the payment of withdrawal claims, without the consent of the board of directors, until the oldest of such claims then unpaid shall have been on file for a period of six months; but in no case shall payment be postponed for a period longer than six months from the date of such notice, and any member who has given the said notice may sue for and recover the withdrawal value of his shares in any such association in any court of competent jurisdiction, if the same is not paid in six months from the date of the giving of said notice of withdrawal."

The suit in the case at bar was instituted September 10th, 1934. Before the institution of this suit, section 49 of the 1925 Revision was amended by *Pamph. L.* 1932, *ch.* 92, effective April 21st, 1932 (*N. J. Stat. Serv.* 1932, § 27-R (49); section 52 of said Revision was amended by *Pamph. L.* 1932, *ch.* 102; *N. J. Stat. Serv.* 1932, § 27-R (52), effective April 22d, 1932, and sections 73 and 74 of the said Revision were respectively amended by *Pamph. L.* 1932, *chs.* 91, 97; *N. J. Stat. Serv.* 1932, §§ 27-R (73) and 27-R (74), both effective April 21st, 1932.

Section 52 of the statute as amended in 1932, provides as follows:

"52. Payment of withdrawals.

Withdrawals from any such association shall be paid in the order in which the notices thereof shall 'have been received, but not more than one-half of the total receipts of any such association in any month, as income on investments authorized by section twenty-six hereof, dues on shares pledged with such association to secure loans authorized by paragraphs II and V of section twenty-six hereof and repayment of loans authorized by paragraphs II and V of section twenty-six hereof shall be required to be used for the payment of withdrawals without the consent of the board of directors; provided, however, that if, in any one month the funds of the association required to be available for the payment of withdrawals together with any other funds made available for such purpose by its board of directors, are at any time insufficient for the payment of all withdrawals which

have been requested, then the right of any withdrawing member to priority of payment of the withdrawal value of his shares in the aforesaid order, shall be only to the extent of five hundred dollars in any one month and if all withdrawing members have received payments in full or on account of their withdrawals to the extent of five hundred dollars in any one month and there is then a balance of such funds available for the payment of withdrawals then said order of priority of payment, to the extent of five hundred dollars shall continue to apply until such balance is exhausted; and no withdrawals shall be paid if the funds available for the payment of matured shares are insufficient to pay all matured shares, the payment of which has been requested within thirty days after maturity; and members who have thus requested payment of their matured shares shall have a right to such payment prior to the rights of members who have requested payment of the withdrawal value of their shares. A member who has filed a notice or request for withdrawal shall not have the right to sue any such association to recover the withdrawal value of his shares or such part thereof as may not be paid, so long as the funds in the treasury of such association are applied as required herein."

The complaint contains five counts. The first count is based upon a cause of action alleged to have accrued to the plaintiff under section 52 of the 1925 Revision, six months after the filing of her written application for withdrawal. The second count is based upon the alleged violation by the defendant association of the mandate of the 1932 amendment of section 52. The third count is based upon an alleged violation of Order Number One issued by the commissioner of banking and insurance March 14th, 1933, under the authority, as alleged, of *Pamph. L.* 1933, *ch.* 48; *N. J. Stat. Serv.* 1933, § 27-R (86), which it may be noted, has been amended by *Pamph. L.* 1933, *chs.* 166, 258 and 381; *N. J. Stat. Serv.* 1933 and 1934, § 27-R (86). The fourth count repeats the first nine paragraphs of the first count and alleges "that on the 8th day of May, 1931, the said defendant did agree in writing with the plaintiff that it would pay to the plaintiff one hundred

($100) dollars each month beginning immediately until such time that the aforesaid prepaid certificate '*Exhibit A*,' representing an investment of one thousand ($1,000) dollars would be paid in full" and "that the said defendant has never kept its promise in that regard and failed to make the monthly payments as aforesaid." The fifth count is the same as the fourth count, except that it alleges a promise of the defendant made July 8th, 1931, to repay plaintiff's withdrawal in monthly installments of $100, commencing on the first Tuesday of August, 1931.

Plaintiff moves to strike out the further amended answer and separate defenses to the first, fourth and fifth counts and for judgment on the fourth and fifth counts.

This motion is of the nature of a general demurrer and has opened up the pleadings and as the first faulty pleading must fall, it is appropriate to first examine the affected counts of the complaint to ascertain whether or not they respectively set forth legal causes of action. Defendant association does not move its motion to strike the complaint, reserved in its further amended answer, and the consideration of the affected counts of the complaint is caused by the plaintiff's motion to strike the further amended answer and separate defenses thereto. The quality of the second and third counts of the complaint may not be considered on this motion to strike the further amended answer and defenses to the other counts, for the pleadings are only opened by the motion, as to the counts of the complaint, to which the answer and separate defenses sought to be struck, are responsive.

Giving first consideration to the first count of the complaint, it is apparent at the outset, that if the 1932 amendment of section 52 controls the procedure herein that, inasmuch as this count is based entirely upon the statutory privilege to sue contained in section 52 of the 1925 Revision and does not allege the violation by the defendant association of the mandate of the 1932 amendment of said section, that the said count does not state a cause of action and must be struck. The plaintiff contends that the said amendment does not affect what she claims are her vested rights which accrued before its enactment and under the prior statute, and that,

if the said amendment be construed as affecting her alleged vested right to sue, that it is unconstitutional and within the inhibitions of article 1, section 10 of the constitution of the United States and of section 1 .of the fourteenth amendment of said constitution, and of article 4, section 7, paragraph 3 of the constitution of the State of New Jersey, and further, that the said amendment so construed, cannot affect plaintiff's vested rights as alleged in the first count of the complaint, because of the provisions of 4 *Comp. Stat., p.* 4971, § 3. The defendant association argues that plaintiff's rights were not vested, that the amendment was procedural and that it is a valid exercise of both the reserved and inherent police powers of the state.

A right is not vested unless it is something more than a mere expectation based upon an anticipated continuance of present laws and must be a right or interest in property that has become fixed and established and not open to doubt or controversy (*Leach* v. *Commercial Savings Bank,* 205 *Ia.* 1154; 213 *N. W. Rep.* 517, 521) ; and rights dependent upon a statute and still inchoate, not perfected by final judgment or reduced to possession, are lost by repeal or expiration of the statute. *Sutherland on St. Const.,* § 163; *Cooley Const. Lim.* (*7th ed.*) 359, 360; *Louisiana* v. *Mayor, &c., of New Orleans,* 109 *U. S.* 285; *Morley* v. *Railway Co.,* 146 *Id.* 162.

Plaintiff's claim is that of a withdrawing member of the defendant association. The privilege of withdrawal of capital from a mutual building and loan association, and the privilege of suit therefor do not exist except as they may be conferred by by-laws or statute. *Fitzgerald* v. *State Mutual Building and Loan Association,* 76 *N. J. Eq.* 137; *Thirteenth Ward Building and Loan Association* v. *Weissberg,* 115 *Id.* 487, and the statutory privilege may not be exercised to defeat the primary equity of all members of a mutual building and loan association of equal participation in assets. *Fitzgerald* v. *State Mutual Building and Loan Association, supra.* In fact, in a withdrawal suit under section 52 of the 1925 Revision, instituted before the enactment of the 1932 amendment, the revered late Chief Justice Gummere refused to strike out an answer filed by a building and loan

association, which set up that the enforcement of the privilege of suit in that case would give the plaintiff therein a preference, would give to the plaintiff more than his proportionate share of assets and would deprive the remaining and continuing members of their right to proportionately share assets. See pleadings and orders in unreported cases of Meyer *v.* Creative Building and Loan Association, Richman *v.* Hercules Building and Loan Association and Goldman *v.* Hercules Building and Loan Association, Nadel *v.* Tri-County Building and Loan Association. See, also, pleadings and order of Circuit Court Judge Henry E. Ackerson in the Supreme Court case of Bloomberg *v.* Basic Building and Loan Association. In view of the foregoing authorities, it is clear that the right or privilege of plaintiff under the 1925 Revision, was not vested within the meaning of the aforesaid constitutional and statutory provisions.

The 1932 amendment of section 52 does not reduce the amount of plaintiff's monetary interest in the defendant association. It is true that it provides a different scheme for the payment of withdrawals than that provided by the section which it amends, but the statutory changes merely related to the time, and not the quantum, of payment. This being so, the said amendment may be upheld as a procedural statute and binding upon all members of building and loan associations instituting suits for withdrawal after its enactment. See *Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143; *Rader* v. *Southeasterly Road, &c.,* 36 *Id.* 273; *Bronson* v. *McKenzie,* 1 *How.* 311; *McCrackin* v. *Hayward,* 2 *Id.* 608; *Newark Savings Institution* v. *Forman,* 33 *N. J. Eq.* 436; *Allen* v. *Allen,* 34 *Id.* 493; *Toffey* v. *Atchison,* 42 *Id.* 182; *Potts* v. *New Jersey Arms and Ordinance Co.,* 17 *Id.* 395; *Potts* v. *Delaware Water Power Co.,* 9 *Id.* 592, 615; *Wooton* v. *Pollack,* 116 *Id.* 490; *Klorman* v. *Westcliff Co.,* 12 *N. J. Mis. R.* 266.

The cited statute (4 *Comp. Stat., p.* 4971, § 3), is declaratory of the law and is of no aid to plaintiff. As the amendment being considered modifies the procedure for the enforcement of the withdrawal privilege, the terms of 4 *Comp. Stat., p.* 4971, § 3, as well as the fundamental law of which

it is declaratory, require that the proceedings herein conform with the modified procedure required by the amendment which does not deprive any one of a remedy which he could use for his legitimate use or without injury to others. *People v. Title Mortgage Guaranty Co.*, 264 *N. Y.* 69; 190 *N. E. Rep.* 153.

The facts in this case do not differ greatly from those before the court in the case of *Fornataro* v. *Atlantic Coast Building and Loan Association*, 10 *N. J. Mis. R.* 1248, the only difference being that in that case, plaintiff's withdrawal application had been filed less than six months prior to the enactment of the 1932 amendment of section 52. As it is my opinion that the privilege to sue under the Revision was not so constitutionally vested as to become a property right, it is my further opinion that the said amendment is constitutionally binding upon the plaintiff herein as a valid exercise of the reserved police power to amend corporate charters and validly controls the procedure in any suit instituted after its enactment for the recovery of a withdrawal. *Fornataro* v. *Atlantic Coast Building and Loan Association, supra.*

I further hold that the 1932 amendment of section 52 is constitutional as a valid exercise of the inherent police power of the state, an essential attribute of sovereignty. presupposed by the constitution which must be construed accordingly.

Building and loan associations are *quasi*-public instrumentalities and are of public utility and importance in fostering home ownership and systematic thrift. Our legislature's recognition of this public service is found in the preambles and titles to *Pamph. L.* 1847, *p.* 172; *Pamph. L.* 1849, *p.* 227; *Pamph. L.* 1852, *p.* 83; Revision of 1877, page 92, General Statutes, page 33. This public service is also recognized by text writers and the courts. The following citations will suffice. *Sundheim* (*2d ed.*) 23, 24, § 7, *p.* 25, § 8; 9 *C. J.* 920; *Bath Building and Loan Association* (*Me.*), 136 *Atl. Rep.* 284, 286; *State, ex rel. Bettman* v. *Court of Common Pleas*, 124 *Ohio St.* 269; 178 *N. E. Rep.* (*Ohio*), 258; *Treigel* v. *Acme*

*Homestead Association* (Louisiana Supreme Court decided March 4th, 1935, as yet unreported).

The building and loan statutes enacted for the protection of the savings of the public, are enacted under the inherent police power of the state. *Krimke* v. *Guarantee Building and Loan Association,* 112 *N. J. L.* 317; *State* v. *Massillon S. & L. Co.,* 110 *Ohio St.* 320; 143 *N. E. Rep.* 894; *Union Savings and Investment Co.* v. *District Court,* 44 *Utah* 397; 140 *Pac. Rep.* (*Utah*) 221; *Brady* v. *Mattern,* 125 *Ia.* 158; 100 *N. W. Rep.* (*Ia.*) 359; *In re Opinions of the Justices* (*Mass.*), 181 *N. E. Rep.* 833, 836.

This state first assumed to regulate withdrawals by the passage of *Pamph. L.* 1899, *p.* 357, but not until the 1903 Revision did it regulate the method of paying withdrawals. *Pamph. L.* 1903, *p.* 457. Statutes regulating withdrawals evidence the public policy of the state with reference to the subject-matter. *Latimer* v. *Equitable Loan and Investment Co.,* 81 *Fed. Rep.* 776. The legislature, in enacting the 1903 Revision, for the first time completely legislated upon the subject of building and loan associations and in that revision, enacted the then public policy of this state with reference to such associations. The design of this statute was to reform building and loan operation as conducted by the national associations of other states operating within this state (then emulated by some of the associations of this state), which was inimical to the best interests of the home-owning and wage-earning public of this state. Its designed object was speedily accomplished as the national associations could not operate under our act, with the same profit to management and underlying stockholders as theretofore. The rigid requirements of that revision as to investments, expenses and withdrawals, as well as other matters, forced all associations operating in this state, to operate on a truly mutual basis for the proportionate benefit of all members. Many amendments of the various sections of the said revision were enacted and in 1925, the legislature enacted another general revision of the building and loan statutes. This later revision has likewise been amended and supplemented in many respects prior to the passage of the 1932 amendment of section 52 and

all such amendments were made necessary in the opinion of the legislature, by the changing economic and social conditions affecting the operation of building and loan associations. Each revision, amendment and supplement evidenced the public policy of this state with reference to the subject-matter of such legislation.

Building and loan associations are incorporated under the said statutes as the instrumentalities for effectuating the public policy of the state enunciated in the said statutes. As the creatures of the state for such purpose, they must obey the mandate of the statute and, at all times make effective the public policy of the state, for the time being, as evidenced by the then existing statutes.

It is not to be presumed that in enacting the 1932 amendment of section 52, that the legislature was acting solely for the benefit of future members of associations. The economic conditions affecting building and loan associations were, at that time severe, as evidenced by the numerous amendments of the 1925 Revision enacted at that session of the legislature, which conditions were noticed by Judge Sooy in his illuminating opinion in the Fornataro case. At the time of the enactment of the said amendments unemployment was increasing; the growing needs of the saving public to repossess their savings occasioned unprecedented withdrawals; at the same time, for the same reasons occasioning withdrawals; borrowers were becoming delinquent and associations were acquiring real estate through foreclosure, which real estate was then unsaleable and under the then provisions of the statute, wealthy insiders with large share holdings, by filing early applications for withdrawal, in many cases, preempted the entire receipts of an association for many months to the exclusion of needy unemployed members filing later applications for withdrawal. The design of the legislature in enacting the amendment was to spread the funds available for withdrawal over a larger number of members and those most in need thereof, and also to prevent the wrecking of associations by numerous suits for withdrawals under the provisions of section 52 of the Revision, which would have resulted in the insolvency of associations which, in turn,

would have made all sinking fund mortgage loans of home-owning borrowers of insolvent associations immediately due for their face amount, at a time when there was no mortgage money available for refinancing. *Weir* v. *Granite State Provident Association,* 56 *N. J. Eq.* 234; *Harris* v. *Nevins,* 68 *Id.* 684.

A real emergency existed affecting the homes and savings of over one million of the citizens of this state, which confronted the 1932 legislature and the building and loan legislation of that year was emergency legislation enacted for the protection of a large proportion of the citizens of our state. The emergency character of legislation is not to be determined solely by its recital of the emergency requiring its enactment or a limitation of the period it shall remain in force. Legislation may be emergent in character although it does not recite the emergency. *Hourigan* v. *Township of North Bergen, supra; People* v. *Title Mortgage Guaranty Co., supra.* The emergency requiring the enactment of legislation and characterizing it as emergent, are evidenced by the economic facts and circumstances existing at the time of and motivating its enactment, of which the court will take judicial notice. And an emergency statute, the life of which is not limited by its terms, may cease to operate upon the passing of the emergency. *People* v. *Title Mortgage Guaranty Co., supra;* and, in any event, such a statute may be later repealed or amended, as the emergency passes, intensifies or wanes.

All presumptions are in favor of the constitutionality of an act enacted by the votes of legislators who have sworn to uphold the constitutions of the state and of the United States.

In construing statutes, the authority of the court is exhausted when it has ascertained that the legislature had power to legislate in matters of police and it is not concerned with the policy of the legislation. Ascertaining the power to legislate, which is apparent in the case of *Pamph. L.* 1932, *ch.* 102, unless the statute appears clearly to be arbitrary or unreasonable and without substantial relation to its object, the judgment of the legislature is final and the statute must be sustained. *Williams* v. *Baltimore,* 289 *U. S.* 36; *Hodge*

v. *Cincinnati,* 284 *Id.* 335; *Price* v. *Illinois,* 238 *Id.* 446; *McLean* v. *Arkansas,* 211 *Id.* 539; *Purity Extract and Tonic Co.* v. *Lynch,* 226 *Id.* 192; *Green* v. *Frazier,* 253 *Id.* 233; *C. B. and Q. Railroad Co.* v. *McGuire,* 219 *Id.* 549; *Stephenson* v. *Binford,* 287 *Id.* 251; *Sproler* v. *Binford,* 286 *Id.* 374; *McCray* v. *United States,* 195 *Id.* 27. That the legislation in question was not arbitrary or unreasonable, is evidenced by an inspection of similar legislation cited in defendant's brief, passed by many states of the union in 1931 and 1932, which changed the withdrawal privileges of then members. It is quite likely that the exercise of rights as claimed by the plaintiff herein, under the economic conditions affecting building and loan associations in 1932 and up to the present time, would have resulted in the insolvency of associations and the delayed and reduced payments to withdrawing shareholders of their proportionate share of assets. It cannot, therefore, be confidently asserted that the amendment before the court delayed plaintiff's recovery of the withdrawal value of her shares. It was apparently the judgment of the legislature that the contrary would result through the preservation of the solvency of associations from attacks by an importunate minority desiring to withdraw from the common partnership enterprise, when economic conditions made it impossible for associations to pay all withdrawals promptly. It was the protection of the interests of members of the association holding shares at the time of the enactment of said amendments, which motivated the legislators in enacting the amendment of those years, for in this state, as in other states, chaos and destruction of institutions and loss to home owners and savers would have resulted from the enforcement of rights under preceding statutes enacted under different economic conditions.

Public policy is not constant. It is ever changing, varying with circumstances caused by new economic and social conditions. *Merrick* v. *N. W. Halsey & Co.,* 242 *U. S.* 568; *William* v. *Baltimore, supra;* and a building and loan association, incorporated under a statute enacted under the police power, and subject to amendment under the same power, must effectuate at all times the public policy of such regulatory

statutes in force at the time. As the creature of the statute for such purpose, it may not disobey, or, in any way, contravene, the statute. It must be kept in mind that the privileges of plaintiff were acquired under an amendable statute enacted under the inherent police power of the state and subject to future amendment under the same power and this was known by the plaintiff. *Fornataro* v. *Atlantic Coast Building and Loan Association, supra.*

The building and loan statute and the constitution of every association are constituent parts of the membership contracts of every member of a building and loan association. Both are amendable—the former by the legislature under its constitutional power—the latter by action of the members or directors in accordance with its terms. When the statute is amended, the membership contract is correspondingly amended and such statutory amendment becomes part of the membership contract. Constitutions may not be in derogation of the statute evidencing the public policy of the state and when the statute is amended, such amendment controls the rights and privileges of the association and its members and any existing provision of the constitution, in conflict with such amendment, becomes a nullity. The contract, therefore, which includes the amendable statute, is itself amended by an amendment of the statute and is not within the constitutional interdictions as the obligation of such contract or a remedy for its enforcement, is not impaired by such statutory amendment.

But the plaintiff asserts that upon the maturity of her withdrawal notice or, at the end of six months after the filing thereof, that she became a creditor and that as such her rights were not affected by the amendment of the statute, passed after the termination of her membership by her attempted withdrawal. It is true that withdrawing shareholders have been held to be general creditors (*United States Building and Loan Association* v. *Silverman* (1877), 85 *Pa.* 394), a rule quickly modified in that state (*Christians Appeal* (1883), 102 *Id.* 184), and now entirely discarded by the courts of Pennsylvania. *Brown* v. *Victor Building and Loan Association*, 302 *Id.* 254; 153 *Atl. Rep.* 349; *Slone* v. *New Schiller*

*Building and Loan Association,* 302 *Pa.* 544; 153 *Atl. Rep.* 758; *Publicker* v. *Potash Brothers Building and Loan Association,* 159 *Atl. Rep.* 58; *Weinroth* v. *Homer Building and Loan Association,* 310 *Pa.* 265; 165 *Atl. Rep.* 28. It has also been held that they are *quasi*-creditors (*Heinbokel* v. *National Saving and Loan Association,* 58 *Minn.* 340; 59 *N. W. Rep.* 1050); but this rule, in these times, works great hardship on needy withdrawing members from solvent but frozen associations, for they cannot share in profits or claim interest, from the maturity of their notices until the funds in the treasury enable the associations to pay their withdrawals when reached in the order provided by the statute or by law. *Synott* v. *Iron Belt Building and Loan Association,* 89 *Fed. Rep.* 292. This rule, it seems to me, defeats equal participation in assets for it deprives a withdrawing member, unpaid perhaps for a long period, of dividends on his shares representing his proportionate share of earnings, the right to which is an incident of share ownership. The better rule is that membership continues after withdrawal and until payment or, at least, until the association breaches the membership contract by failing to obey the mandate of the statute as to payment of withdrawals. This rule preserves solvency and that it is the New Jersey rule is, I think, evident in the decisions of our courts in *Fitzgerald* v. *State Mutual Building and Loan Association, supra; Meyer* v. *Creative Building and Loan Association, supra,* and *Richman, Goldman* v. *Hercules Building and Loan Association, supra.* A mere attempt to withdraw cannot transmute the status of a member into that of a creditor. *Mutual B. & I. Co.* v. *Frederick,* 43 *Ohio App.* 270; 183 *N. E. Rep.* 114; *affirmed, sub nom. Frederick* v. *Mutual B. & I. Co.,* 128 *Ohio St.* 474; 191 *N. E. Rep.* 729. For a full discussion of the status of a withdrawing member see *Building and Loan Annals,* 1932, pages 281, 298.

But even assuming for the purpose of argument solely, that plaintiff's status is that of creditor (*Pamph. L.* 1932, *ch.* 102; *N. J. Stat. Serv.* 1932, § 27-R (52), constitutionally binds her because of the rules of law now to be stated.

Defendant's brief cites numerous cases holding that con-

tracts made with institutions regulated under the police power, or contracts, the future regulation of which is appropriate under the police power, may not be enforced in the face of later enacted legislation, prohibiting their enforcement and that such statutes enacted under the police power do not come within the interdiction of the constitutional prohibition against the impairment of the obligations of contracts or of the fourteenth amendment of the constitution of the United States. Gold clause cases (*Norman* v. *Baltimore and Ohio Railroad Co.*, 555 Ct. 407; *Nortz* v. *United States, Ibid.* 428; *Perry* v. *United States, Ibid.* 432), recently decided by the United States Supreme Court are the latest decisions enunciating these now well settled rules of law. These rules are applicable to building and loan statutes and are authority for the holding herein, that *Pamph. L.* 1932, ch. 102; *N. J. Stat. Serv.* 1932, § 27-R (52), amending section 52 of the 1925 Revision of the Building and Loan act, retrospectively construed, is a valid exercise of the inherent police power and is constitutionally binding upon the plaintiff herein. *Treigle* v. *Acme Homestead Association, supra.* This case deals with facts and statutes quite similar to those under consideration in the case at bar. The logic of that decision is apparent, is applicable to the present situation and is adopted by this court. See, also, *Building and Loan Annals,* 1932, pages 299, 307 for the first, and excellent, statement of the rules of law enunciated in the Fornataro and Treigle cases and upon which this decision is based.

The plaintiff contends that the 1925 statute in force at the times of her subscription for shares, withdrawal thereof and at the expiration of six months thereafter, gave her a vested contractual right constitutionally protected from subsequent legislation, and that the contract contained in the certificate itself, is likewise untouched by the subsequent legislation. What has heretofore been said concerning contracts made unenforceable by later enactments under the inherent police power negatives this argument. It may also be noted that no legislature can curtail the power of its successors to make such laws as they deem proper in matters of police (*Metro-*

politan Board of Excise v. Barrie, 34 N. Y. 657; Boyd v. Alabama, 94 U. S. 645; Stone v. Mississippi, 101 Id. 814), and parties may not by their contracts, oust the state of its right to exercise its police power (Manigault v. Springs, 199 Id. 473, 480; Louisville and Nashville Railroad Co. v. Mottley, 219 Id. 467, 482; Atlantic Coast Line Railroad Co. v. Goldsboro, 232 Id. 548, 553; Denver v. Rio Grande Railroad Co., 250 Id. 241, 244; Union Dry Goods Co. v. Georgia Public Service Corp., 248 Id. 372; Dillingham v. McLoughlin, 264 Id. 370), and the gold clause cases, 55 Supreme Court 407 et seq.; Home Building and Loan Association v. Blaisdell, 290 U. S. 398; Erie Railroad Co. v. Public Utilities Commission, 89 N. J. L. 57; affirmed, 90 Id. 673.

Examples of the rights and privileges of members and creditors of building and loan associations under statutes and contracts falling upon the enactment of subsequent legislation under the police power, are found in State v. Massillon S. & L. Co., supra; Shore v. Lone Star Building and Loan Association, 71 S. W. Rep. (2d) 863; Dillingham v. McLoughlin, supra; In re Opinions of the Justices, supra; Hacker v. Farm and Home S. and L. Association, 6 Fed. Supp. 610; Lowell Co-Operative Bank v. Co-Operative Central Bank (Mass.), 191 N. E. Rep. 921; Egg Harbor Building and Loan Association v. Baake, 72 N. J. Eq. 603; Huber v. Home S. and L. Association (Wash.), 169 Pac. Rep. 979; Krimke v. Guarantee Building and Loan Association, supra; State, ex rel. Contonio v. Italo-American Homestead Association (La.), 149 So. Rep. 449; Iowa Central Building and Loan Association v. Klock (Ia.), 104 N. W. Rep. 352.

Plaintiff relies upon the decision in Intiso v. Metropolitan S. and L. Association, 68 N. J. L. 588, but this decision is not in point for the reasons that there the statute impaired contractual rights, while here it modified a statutory privilege and amended the membership contract; there it reduced the quantum of the recovery whereas here, it merely modified the remedy for the enforcement of a statutory privilege. Besides this, the right of the state to enact the legislation there in question under the police power, was apparently not called to the attention of the court. The

decision in that case was before judicial recognition of the extent of the police power and if this power had been considered by the court in that case, it might have upheld the constitutionality of the legislation there questioned. The case cannot be considered as a precedent for the case at bar.

I have dealt at length with the questions involved because of their great public importance. The inherent police power of the legislature to legislate from time to time so as to preserve the financial institutions of our state and thereby protect the homes and savings of their members, depositors and policy holders (for what has been here said as to statutes affecting building and loan associations is applicable to statutes affecting banks and insurance companies), should be, unequivocally and judicially, settled. The protection of the economic system of the state, as well as social justice for many citizens, whose homes and savings are involved, require it.

For the reasons hereinbefore expressed, the first count of the complaint must be struck, as it does not allege that the defendant association violated the statutory mandate contained in *Pamph. L.* 1932, *ch.* 102; *N. J. Stat. Serv., supra,* as to the payment of withdrawals. Complaints in similar cases have, on motions to strike answers, been struck by Circuit Judge William A. Smith in the unreported case of Horowitz *v.* Guarantee Building and Loan Association (Essex County Circuit Court), and Circuit Judge Newton H. Porter, sitting in the unreported Supreme Court case of Bucsi *v.* Longworth Building and Loan Association.

The fourth and fifth counts set up contracts to pay withdrawals in accordance with the terms of the contracts. As the statute concerning withdrawals evidences the public policy of the state, any contract contravening such public policy is void, for the parties cannot waive or contract away the provisions thereof or rights or privileges acquired thereunder. *Latimer* v. *Equitable Loan and Investment Co., supra; Appeal of Powell & Doyle,* 93 *Mo. App.* 296; *Shapiro* v. *Mortgage Building and Loan Association (Pa.),* 158 *Atl. Rep.* 573; *Adams* v. *Union National S. and L. Association (Ind.),* 100 *N. E. Rep.* 389; 102 *Id.* 145. Such

contracts as alleged in the fourth and fifth counts providing for payments to a withdrawing member in installments not provided for by the statute, would give to such withdrawing member a preferential right of payment over other members, violate mutuality, contravene the statute and, likewise, are void. *Publicker* v. *Potash Brothers Building and Loan Association, supra; Weinroth* v. *Homer,* 310 *Pa.* 265; 165 *Atl. Rep.* 28; *Conservative Homestead Association* v. *Dreyfuss,* 175 *La.* 404; 143 *So. Rep.* 356.

For the reasons stated, the fourth and fifth counts do not disclose causes of action and should be struck.

Plaintiff has so vigorously urged both in argument and brief, that the shares held by her are preferred stock and therefore, she has a preferential right as to payment, that some mention should be made as to this point. Plaintiff relies largely upon the decision in the case of *Newark Twenty-one Building and Loan Association* v. *Zukerberg,* 115 *N. J. Eq.* 579. I cannot give that decision the effect contended by the plaintiff. Section 73 of the 1925 Revision and as amended by *Pamph. L.* 1932, *ch.* 91; *N. J. Stat. Serv.* 1932, § 27-R (73), defines all types of shares which associations of this state are authorized to issue and speaks of "their status as common shares." Section 74 of the same Revision and its amendment (*Pamph. L.* 1932, *ch.* 97; *N. J. Stat. Serv.* 1932, § 27-R (74), provides that "no such association shall issue preferred or other than common shares." Section 74 of the 1925 Revision further provided that "paid up shares shall only be surrendered and withdrawn on the same terms and under the same conditions as provided in the constitution for the surrender and withdrawal of installment shares" and the 1932 amendment of said section provides that "all classes of shares shall be surrendered and withdrawn on the same terms and under the same conditions as provided in the constitution and in this act, for the surrender and withdrawal of shares." Section 49 of the said Revision and its amendments (*Pamph. L.* 1932, *ch.* 92; *N. J. Stat.* 1932, § 27-R (49), provides the procedure for withdrawal of all shares and the amount to be paid thereon and the losses to be shared by all members. Section 52 of the said Revision and its afore-

said amendment in 1932, provide the method of payment of withdrawals.

From a reading of the said statute, it is apparent that the holder of once called "paid up," but now called "income," shares, holds common shares, is a shareholder and is not a creditor. *Fitzgerald* v. *State Mutual Building and Loan Association, supra.* The quoted extracts of these enactments were not mentioned in the opinion in the Zukerberg case and their significance could not have been called to the attention of the court, and, in view of them, it is impossible to adopt the construction of the opinion in that case which is placed upon it by the plaintiff herein. Both under the 1925 Revision and the stated amendments thereof, the withdrawal privileges of all members other than with respect to the withdrawal of profits upon income shares, were identical, without regard to the type of shares held by them. As those holding income shares had withdrawn their profits at stated periods, there are no profits to be paid upon withdrawal, as the withdrawal profits to which they have agreed with the association, under the authority of section 74, have been withdrawn by them, the said permission being an exception to the preceding language of the same sentence that all shares shall be withdrawn under the same terms and conditions. The plaintiff as the holder of income shares has no rights as to withdrawal, or payment of withdrawal, different or superior to those of members holding other types of shares and her withdrawal privileges are, in all respects, controlled by the statutory provisions concerning withdrawals. 4 *John Marshall Law Journal (No.* 3) 53.

The foregoing conclusions make it unnecessary to consider the motion to strike the further amended answer and separate defenses to the first, fourth and fifth counts. The case will proceed to trial on the second and third counts of the complaint and the further amended answer and separate defenses thereto. An order may be presented in accordance with these views.