Weinroth, Executrix, *v.* Homer Building & Loan Association, Appellant.

266

Argued December 1, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*N. S. Winnet,* with him *Albert S. C. Millar* and *B. T. deYoung,* for appellant.—A building association has no authority to issue notes to withdrawing stockholders for the supposed "withdrawal value" of stock, or for the purchase of its own stock, in the guise of negotiating a loan of money from the stockholder to the association.

A withdrawing stockholder of a building association is not entitled to payment where there are a number of other withdrawing stockholders who gave previous notice of their desire to withdraw and who have not been paid and when one-half of the funds in the treasury have not been sufficient, then or since, to pay other stockholders who gave previous notice of their desire to withdraw: Publicker v. B. & L. Assn., 104 Pa. Superior Ct. 530; Brown v. Bldg. Assn., 302 Pa. 254; Stone v. B. & L. Assn., 302 Pa. 544.

The holder, who is the payee, of promissory notes given by a building association for the supposed withdrawal value of stock, with the knowledge that the notes were given for such purpose, can not recover payment from the association if the association was insolvent at the time the notes were given and prior thereto: Com. v. Penna. B. & L. Assn., 20 Pa. C. C. 589; Stone v. B. & L. Assn., 302 Pa. 544.

*S. J. Gottesfeld,* with him *Harry Shapiro,* for appellee.—The consolidated corporation is estopped from claiming plaintiff is not a creditor: Buist's Est., 297 Pa. 537; Greenfield & Co. v. B. & L. Assn., 14 D. & C. 567; Mitchell v. Clay Co., 291 Pa. 282; Stone v. B. & L. Assn., 302 Pa. 544; Malamut v. B. & L. Assn., 16 Pa. D. & C. 187.

OPINION BY MR. JUSTICE KEPHART, January 9, 1933:

Appellee as executrix held $10,000 full paid stock of Homer B. & L. Association. On December 24, 1929, she notified the association of her intention to withdraw the value of her stock. It was not then able to pay, and gave her ten $1,000 notes for which she surrendered the stock. Three of these notes were paid and this action was entered on the remaining seven. Appellee submitted evidence to show that when appellant was unable to pay, $10,000 was loaned by her to the association, the notes being given for this loan, and $10,000 was then paid for the stock. The only real transfers of record were the issue of the notes and surrender of the stock. The minutes of the association show the directors authorized the "borrowing" of $10,000 on this date. In 1930 this association merged with another building and loan; the consolidated association was called Homer Building & Loan Association, and is the defendant in this action. It will hereafter be referred to as appellant. From the judgment entered for the executrix by direction of the court below this appeal is taken.

Appellant contends that the transaction was in effect an attempt to prefer plaintiff over other withdrawing shareholders in one of the constituent associations. On December 24, 1929, 257 shareholders had given notice of withdrawal; of these 56 had been paid in full, 68 paid in part, and 133 received nothing. During the same period the association was being pressed by banks to liquidate their loans. Appellee stated she had given written notice of her intention to withdraw, but did not remember the date. Her notice does not separately appear on the books although the secretary admitted he had received it.

We have recently fully discussed in Stone v. New Schiller B. & L. Assn., 302 Pa. 544, the relative rights of withdrawing as opposed to other shareholders. It is unnecessary to repeat what was there said. The fundamental principle is that a withdrawing shareholder is en-

titled only to his proportionate share of the profits of the association after the payment of creditors. He may not gain any preference by prosecuting his claim to judgment, but still retains his status as a shareholder and execution upon the judgment will be restrained until there is sufficient surplus to pay it: U. S. B. & L. Assn. v. Silverman, 85 Pa. 394; or until his proportionate share be determined: Christian's App., 102 Pa. 184; Stone v. B. & L. Assn., supra; Sperling v. B. & L. Assn., 308 Pa. 143; Brown v. Victor B. & L. Assn., 302 Pa. 254, 258.

It would therefore seem clear that if as a fact there were not sufficient funds in the association on December 24, 1929, to pay all shareholders dollar for dollar what they were entitled to, appellee cannot, by the fiction of a loan and subsequent judgment on the notes, gain a preference over other shareholders of equal or better standing. Had this action been instituted prior to the merger, courts would have endeavored to preserve the rights of all withdrawing shareholders as well as those of the association because the shareholders sustain the relation of partners to each other. These principles are admitted by both the trial judge and appellee, but it is urged that the merger changed the situation. Appellant took over the assets and liabilities of the associations, and it is urged that, as the first association ceased to exist by the merger, appellee cannot be considered a shareholder in it, nor of course is she a shareholder in the consolidated association. Consequently it is said she must be treated as a simple creditor, and entitled to judgment for the full amount of the notes. It therefore becomes necessary to consider the effect of the merger upon the rights of a withdrawing shareholder pressing his claim against the consolidated association, and other shareholders of equal right in one of the constitutent associations.

We said in Buist's Est., 297 Pa. 537, 542: "The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of

properties, powers and facilities of the constituent companies, forming a new corporate entity;......to ascertain what powers and privileges [and liabilities] the new company has, one must be referred to what existed in the old companies: Penna. Utilities Co. v. Pub. Ser. Com., 69 Pa. Superior Ct. 612, 618." In Halpern v. Grabosky, 296 Pa. 108, 111, plaintiff contended "that his equity in the stock survived the corporate sale and followed the assets of the corporation; that any benefits received by defendant from such assets belonged to him in the proportion his shares bore to the total number." We there held that corporate assets could be pursued in the hands of a new company when a preference was created or the transfer was with intent to defraud creditors. Recovery may be had through judgment against the old company, or by fastening a constructive trust on such assets with the new company as trustee.

The rights and remedies of persons having claims against supposedly extinct companies was discussed by Chief Justice FRAZER in Mervine v. Mt. Pocono Light & Imp. Co., 304 Pa. 517, 522. While that case treated of a sale or short form merger the principles announced are applicable here. The lower court had abated the action against the subsidiary and the statute of limitations had run against the claim; the court reinstated the suit, saying: "It would be an unwarranted interpretation of the phrase [cease to exist] to hold that a cessation of corporate existence was contemplated to the extent that the legitimate claims of creditors......were defeated by such action...... To permit evasion of that character ......would open the door to corporations seeking to evade their obligations, to effectively accomplish the purpose by simply transferring their property to other incorporated bodies after suits were begun against them." The court there directed plaintiff, if he recovered judgment, to pursue the property of defendant in possession of the merged company.

The foregoing cases are cited to show that, though the corporate entity may cease to exist, sufficient of its attributes remain to enable a court of equity to protect the claim of a withdrawing shareholder, and in so doing protect those who may be injured through what would be a preference to one shareholder of a constituent over another shareholder of equal standing, which meets a situation such as we have here. When one withdrawing shareholder of a building and loan association that has been merged institutes proceedings to recover his claim, the rights of all withdrawing shareholders may be protected by a court of equity or a court having the powers of a court of equity in the manner and with the same effect as the rights of creditors of a constituent company are protected in merged companies. Equity is not powerless to act when appealed to even though no previous steps have been taken to safeguard all these rights, and for this purpose may stay an execution issued to gain a preference. See order in Sperling v. B. & L. Assn., supra.

The notes here given may be treated as evidence fixing the value of the withdrawing shareholder's rights, just as the values of dissenting shareholders may be agreed on, as in Friedman v. Southern Co-op. B. & L. Assn., 104 Pa. Superior Ct. 514, and unless fraud or overreaching of the rights of other shareholders appears, such evidence will be conclusive as fixing value. The judgment thus entered will still be subject to the order of court for the protection of other shareholders of equal standing in the distribution of the assets. This leads to another question.

As the merged company is now insolvent and the record shows more than 200 withdrawing shareholders at the time of merger whose claims had not been paid in full, it becomes important to determine the relative rights of claimants ordinarily connected with such concerns. They are: [1] the claims of preferred and general creditors; [2] withdrawing shareholders, including matured shareholders; [3] dissenting shareholders or

those who did not consent to or join the merger; [4] the assenting shareholders or those who joined the merged company.

When a merged company is insolvent or liquidating, the question of unscrambling the rights of creditors and dissenting, withdrawing, and assenting shareholders, has never been passed on by us. Just how far nonconsenting or withdrawing shareholders may pursue the corporate property of the constituent, or fasten their claims on the property of the merged company, has never been discussed.

As a general rule the rights of credtiors are superior to those of shareholders of any class. We have decided creditors may pursue the property of the constituent, as it is liable for the claims of its creditors. See Mt. Pocono and Halpern Cases, supra. Creditors may also pursue the assets of the merged company even though the merger agreement did not assume payment of such liabilities. (See our statutes on merger.) There may be a clash between creditors of the constituents and those of the merged company. We do not pass on this question. Nor do we pass on the right of a creditor of a merged concern as such as opposed to rights of dissenting and withdrawing members of a constituent. All these contests may become a question of marshalling of assets.

A dissenting shareholder may temporarily enjoin a merger if he acts promptly, but if the merger is an accomplished fact his remedy is to recover his stock value in money and to that end when necessary execution may issue therefor. A dissenting shareholder's rights would not only fasten on the property of the constituent, but also the general property of the merged concern would be liable. It was through the joint act of the majority shareholders of the constituents that the assets, rights, privileges, and facilities of the two or more companies are merged into a new concern in which the dissenting shareholders are not members. These acts changed the original corporate plan; the old company in which the

dissenters were members was virtually dissolved. Dissenting shareholders are not restricted to make their claims upon the property of the constituent in the possession of the merged company nor the uncertainty of fastening their claims on such property if found. The joint mass of all property after merger is liable for the payment of these claims. *The same rule applies to the claims of matured and withdrawing shareholders whose notice of withdrawal has matured.* The rights of these shareholders are as high as those of dissenting shareholders and should receive equal treatment.

The real difficulty, however, comes in measuring the rights of these shareholders, dissenting and withdrawing, against those of assenting shareholders who joined the merged company that has taken over the assets of all constituents. The assenting shareholders of the constituents lose their rights as shareholders of these companies; they therefore have no claims on their properties or assets. The rights of these shareholders as to such properties must be measured and worked out entirely through their stock holdings in the merged concern. There is of necessity a difference between these two classes of shareholders, that is, shareholders of the merged company and those who refused to or could not join in the merger. The rights of the dissenting and withdrawing shareholders are fixed and stationary; those of the dissenting shareholder, on the day of merger; those of the withdrawing shareholder at the time the notice of withdrawal became effective before merger. The shareholder who accepted shares in the merged company continues active in the business of the new company, sharing its gains and advantages. These possibilities are not enjoyed by the other class. Thus new conditions arise through merger. Their effect, good or bad, should not be borne by the members who did not join. Dissenting, matured, and withdrawing shareholders have a claim against the assets of an insolvent or liquidating merged company higher than the claims of

shareholders in the merged company. In the distribution of assets their claims precede those of such shareholders.

While it is clear therefore that in a merger of building and loan associations the shareholder of a constituent who dissents or has given notice of a withdrawal of his shares therefrom, may sue the new association and secure a judgment, but in view of their relation as shareholders, similar to partners, it is equally apparent that the return on his judgment can be no greater than the value of his proportionate share in the constituent association at the time of merger, considering the rights of other shareholders in equal standing, as just discussed. See Stone v. New Schiller B. & L. Assn., supra. The court below should give defendant without security reasonable time to ascertain and fix the rights of all shareholders in equal right. A reasonable time should consider liabilities and assets, with a view to prevent unnecessary loss to the latter. Appellee is entitled to judgment on the notes; however, execution of the judgment may be stayed until the proportionate value of the plaintiff's stock in the constituent association is thus determined. The liability on the appeal bond should not exceed the proportionate amount due plaintiff.

The appellee further contends that as the plaintiff held full paid stock instead of ordinary installment stock, a preference in her favor would not be improper. This is directly contrary to the well settled rule that all shareholders in building and loan associations, whether of full paid or of installment stock must be treated equally. This rule was laid down in Folk v. State Capital Savings Assn., 214 Pa. 529. That case recognized the right of a building and loan association to issue full paid stock but expressly stated that the holders of such stock should not be entitled to any preference over other shareholders. The court said at page 544: "We find nothing unlawful in the issuing of full paid stock, the dividends of which are not guaranteed but are limited in amount and pay-

able only out of the profits, and the holders of which are entitled to no preference and have no advantage over other stockholders upon distribution in case of loss or insolvency."

Judgment affirmed without prejudice to further proceedings in the court below in accordance with this opinion.