Oechsle et ux. *v.* Lodge Building and Loan Association, Appellant.

Argued October 9, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph Sternberger,* for appellant.

*Jacob A. Kauffman,* with him *Edwin Fischer,* for appellees.

OPINION BY STADTFELD, J., November 20, 1935:

Plaintiffs were stockholders in Union Assembly Building and Loan Association, and claim to have given notice of withdrawal in October, 1929.

The Union Assembly Building and Loan Association merged on June 4, 1930, with Victor Building Association and The Lodge Building and Loan Association to form Lodge Building and Loan Association. Plaintiffs abstained from voting on this merger. Subsequently, on March 18, 1932, a new merger was formed with New Lodge Building and Loan Association resulting in the formation of the present defendant. On this second merger proposition plaintiffs voted negatively. The Banking Department, on July 12, 1933, served a segregation order upon defendant under Section 808 of the Building and Loan Code of 1933.

Plaintiffs filed this Bill in Equity on October 24,

1933, claiming the withdrawal value of their shares as of the alleged withdrawal date in October, 1929.

The Answer avers that the withdrawal notice was uncompleted and that the original association was insolvent when the alleged notice was given; that defendant, or its predecessors, have never been in funds sufficient to pay the shares of the plaintiffs and that, at the second merger, the shares were taken at 65% of their then value but that the actual value is unascertainable. It also raises the defenses of laches and adequate remedy at law.

Upon hearing, the Chancellor, FINLETTER, J., awarded a decree for payment of the value of the shares as of the date of the first merger, $686.94, with interest from said date. Final decree was entered for the above amount and this appeal followed.

The Chancellor found the facts in accordance with the averments of complainants' Bill, and further found that the value of complainants' shares on June 4, 1930, as fixed by the agreement of merger, is $686.94. As a conclusion of law, the Chancellor found that complainants are entitled to the status of withdrawing stockholders as of the date of the original merger, June 4, 1930, and are entitled to the value of their shares as of that date, in the sum of $686.94, with interest from said date, and that they are not guilty of laches.

Appellant contends that complainants, having voted at the meeting on March 28, 1932, to consider the second merger, by this action abandoned their withdrawal notice and their status as non-assenters on the first merger. The Chancellor, in his opinion, disposing of this contention, states: "The fact that the complainants voted at the second merger is immaterial, because they never were stockholders of the merged corporation." The Chancellor was correct in this conclusion, and appellant apparently agrees with this in that it states in its brief of argument, "A dissenting stock-

holder in the old association never became a stockholder in the new association and therefore cannot withdraw from it or vote in it."

Complainants therefore had the status of withdrawing stockholders at the date of the first merger, and are entitled to receive the value of their shares as of that date.

Appellant contends that the liability of defendant association is only for the actual value of the assets which it took, at the time it took them.

As stated in Weinroth v. Homer B. & L. Assn., 310 Pa. 265, 273, 165 A. 28: "The rights of the dissenting and withdrawing shareholders are fixed and stationary; those of the dissenting shareholder, on the day of merger; those of the withdrawing shareholder at the time the notice of withdrawal became effective before merger."

The liability as determined by the agreement on the first merger having become fixed, no subsequent merger can have the effect of reducing it. As stated in the Weinroth case, supra, (p. 273): "The shareholder who accepted shares in the merged company continues active in the business of the new company, sharing its gains and advantages. These possibilities are not enjoyed by the other class [dissenting and withdrawing shareholders]. Thus new conditions arise through merger. Their effect, good or bad, should not be borne by the members who did not join."

Quoting from Budd v. Logan Building & Loan Association, 112 Pa. Superior Ct. 65, 67, 170 A. 325: "There can be no doubt that, after merger, the constituent associations ceased to exist, and the plaintiff's remedy was against the consolidated corporation: Weinroth v. Homer B. & L. Assn., 310 Pa. 265, 162 A. 28; Nice Ball Bearing Co. v. Mortgage B. & L. Assn., 310 Pa. 560, 166 A. 239."

The paid in value of complainants' shares was $780,

91% of which would be $709.80, subject to deductions admitted by complainants, reducing the value to $686.94, the value fixed by the Chancellor.

The Chancellor found that at the time the notice of withdrawal was served upon Union Assembly B. & L. Assn., the latter was solvent. Quoting from his opinion, "The evidence offered by the defendant was vague and meagre and at variance with the Association's own report issued at substantially the same time the notice was served." This finding was based upon the annual report for the year ending September 30, 1929. In the merger agreement, after setting up an additional reserve of 10% and a special reserve fund of $13,407.50, the stock was still worth 91% of its paid in value on June 4, 1930. This agreement, according to the testimony, was made under an order of the Department of Banking. The language of the late Mr. Justice SIMPSON, in Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra, at p. 565, is most pertinent: "The burden of proving this [value] is upon plaintiff; but where, as here, the association adopted the report of the Department of Banking as showing the correct value, and at that value his interest in the old association, represented by his stock, was taken from him, and the merger thus consummated, it would be inequitable, as regards him, to permit the consolidated association to show any less value: Petry v. Harwood Electric Co. (No. 1), supra; Ferrando v. U. S. National B. & L. Assn., supra." Inasmuch as the court found the value at the amount fixed under the merger agreement, at which value the assets were taken over, we cannot see that defendant has any reason for complaint: Hall v. Greater Adelphi B. & L. Assn., 113 Pa. Superior Ct. 14, 171 A. 427.

There is no merit in appellant's contention that complainants were guilty of laches and thereby barred. In Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra, the Supreme Court held (at p. 566): "It is also urged

that plaintiff's delay of seven months in bringing suit ought to estop it from proceeding after that date. If plaintiff was seeking to defeat the merger this would be so; but as plaintiff is only enforcing its constitutional right, the law is otherwise. All that need be said on that point will be found in Malamut v. Wilson B. & L. Assn., 16 D. & C. 187, 189, per STERN, P. J." The opinion of Judge STERN referred to states: "Under the doctrine laid down in Lauman v. The Lebanon Valley R. R. Co., 30 Pa. 42, and Barnett v. Philadelphia Market Co., 218 Pa. 649, it is not necessary, even if the plaintiff had notice of the meeting of stockholders, that he should have attended it and voted against the proposed merger. The association was not in any way misled or injured by the plaintiff's delay in expressing his dissent and in demanding the value of his stock. It has been uniformly held that while the failure to act promptly will forfeit the right to injunctive relief in equity, it will not prevent a dissenting stockholder from suing for the value of his stock in an action at law, and the only lapse of time which will defeat his right in such action is that of the statute of limitations: American Seating Co. v. Bullard, 290 Federal 896; 14 C. J. 1077, sec. 3663, and cases therein cited." Quoting from Weinroth v. Homer B. & L. Assn., supra, 272: "A dissenting shareholder may temporarily enjoin a merger if he acts promptly, but if the merger is an accomplished fact his remedy is to recover his stock value in money and to that end when necessary execution may issue therefor. ...... The same rule applies to the claims of matured and withdrawing shareholders whose notice of withdrawal has matured. The rights of these shareholders are as high as those of dissenting shareholders and should receive equal treatment."

Appellant contends that complainants cannot recover unless they allege and prove that defendant association had sufficient funds to pay, out of one half of its re-

ceipts, the claim of plaintiffs and prior withdrawals, or that the directors assented to the application of other funds for that purpose as required by Act of Assembly. This position loses sight of the fact that complainants are not and never were stockholders in defendant association.

Appellant's claim that the segregation order of the Banking Department is a defense to the present action. As stated by the Chancellor in the opinion filed: ".......the Act under which the order was issued relates only to stay of execution and does not affect the complainants' substantive rights."

The decree of the lower court protects all interests.

The assignments of error are overruled and decree affirmed.