## Yonah Building and Loan Association Case.

Argued September 28, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and RHODES, JJ.

*Samuel I. Sacks,* of *Sacks & Piwosky,* for appellant.

*Sylvan H. Hirsch,* with him *Herbert P. Sundheim,*
Special Deputy Attorneys General, and *Guy K. Bard,*
Attorney General, for appellee.

OPINION BY KELLER, P. J., December 16, 1938:

The main question àt issue in this appeal is whether
the appellant, a withdrawing stockholder of a building
and loan association, who gave notice of her withdrawal
nearly five years before the Secretary of Banking took
over the association for liquidation because of insol-
vency, is entitled, on distribution of its assets, to a
preference over non-withdrawing stockholders.

The Secretary of Banking not only refused to allow
the appellant such a preference, but ruled that $300,
which had been paid her on account of the withdrawal
value of her shares nearly four years before he took

over the association, was an illegal preference, and that she could receive no dividends until the non-withdrawing shareholders had received a proportionate dividend. Appellant filed exceptions to the Secretary's account (1) disallowing her claim for preference and (2) holding the payment of $300 to have been an illegal preference.

The court below sustained the positions of the Secretary of Banking, basing its action on the provisions of Section 1011, of the Act of May 15, 1933, P. L. 565, as amended by Act of July 2, 1935, P. L. 525, Sec. 1, [see margin, note 1], both of which acts were passed long after the appellant gave notice of withdrawal of her stock, and its acceptance and approval by the association. This appeal followed.

We are of opinion that the vested rights of the appellant in the property of the association could not be affected by the passage of subsequent legislation, mak-

[1] "B. The following shall be the order and preference followed by the secretary in the distribution, pursuant to the provisions of this act, of the assets of any building and loan association the affairs of which he as receiver is liquidating; ...... Third. Any claim of a creditor of the association, other than the claim of a shareholder arising from his ownership of shares. Fourth. Any claim of a shareholder, *whether or not reduced to a judgment*, arising from his ownership of shares, whether such shares be installment, full-paid, prepaid, matured, or any other type, and *whether or not notice of withdrawal of such shares has been given to the association.* The amount of the claim arising from each share shall be the amount actually paid in on account of such share, less any amount lawfully deductible therefrom by the association, except in the case of a lawfully and properly matured share, in which case the amount of the claim shall be the actual par value of the share less any payment received on account thereof from the association and less any other amount lawfully deductible therefrom by the association.

"C. Every claim enumerated above shall have the same rank and priority as every other claim in the same numbered paragraph, regardless of the order in which such claims are enumerated." The changes in the amending act of 1935 are shown by the words italicized.

ing a different distribution of its assets. It would violate her rights under Section 10, Article 1 and Section 1 of the Fourteenth Amendment of the Federal Constitution: *Treigle v. Acme Homestead Assn.*, 297 U. S. 189; and under Section 17, Article 1 of our State Constitution: *Sinking Fund Commrs. v. Philadelphia*, 324 Pa. 129, 188 A. 314.

The case must be decided, therefore, on the state of the law as it existed prior to the Act of May 15, 1933, supra, as determined by the decisions of our appellate courts.

To get an adequate idea of the situation of the parties we shall have to go somewhat fully into the facts.

The appellant was the owner of ten shares of installment stock of the Yonah Building & Loan Association. On August 15, 1930 she gave the association notice of her withdrawal of the stock, which was accepted and approved by the association at its September 1930 meeting. On November 8, 1931 her claim was first on the list of withdrawals and she was paid $300 on account thereof. No further payments were made, although frequent demands for payment were made by her. Accordingly, on March 23, 1933 she brought an action in assumpsit against the association in the municipal court to March Term 1933, No. 641, for the paid-in value of her shares, less the amount she had received on account. The case was tried before Judge GABLE without a jury on December 7, 1933. No allegation of insolvency was made by the association either in the pleadings or at the trial. On December 15, 1933 the trial judge made a finding for the plaintiff in the sum of $1,127.58, with the order, "no execution to issue without leave of court." Defendant's motions for judgment non obstante veredicto and for a new trial were dismissed and judgment was entered on the finding on March 14, 1934. No appeal was taken therefrom.

On July 25, 1935, the Secretary of Banking took over the assets of said association for liquidation and gave

notice to all parties to file their claims in Court of Common Pleas No. 2 of Philadelphia County to June Term 1935, No. 5987. This appellant filed her judgment claim and requested priority as a creditor, with the result abovementioned.

At the hearing it appeared that there were no general creditors whose claims arose prior to the effective date of appellant's withdrawal, to wit, September, 1930, except two disputed tax claims of $174.28 and $104, due as of January 1, 1930, which had been objected to.

Shortly before the hearing on the exceptions, but after the filing of the account, the Secretary of Banking gave appellant notice that he would file a petition to sell a parcel of real estate, on which her judgment was a record lien, free and clear of all liens, in accordance with Section 719 of the Department of Banking Code. This was done and at the hearing, appellant claimed to be paid her judgment out of the proceeds of sale of said real estate. This claim was likewise disallowed.

We are of opinion that in the circumstances here present the decree should be reversed.

Counsel for the appellee, the Department of Banking, contend that the Act of 1933, supra, and its amendment of 1935, made no change in the rights of the appellant on the distribution of the assets of the insolvent building and loan association, and were only declaratory of the common law as established by the decisions of the Supreme Court. In support of this position they rely largely on the case of *Christian's Appeal,* 102 Pa. 184, where the Supreme Court reversed the decree of the Court of Common Pleas No. 4 of Philadelphia County, distributing the assets in the hands of an assignee for benefit of creditors of an insolvent building and loan association. In that case, the court below awarded the net balance remaining after payment of general creditors to stockholders who had given notice of with-

drawal of their stock, to the exclusion of stockholders who had not withdrawn their stock.

Mr. Justice STERRETT, speaking for the Supreme Court said, inter alia: "The principal ground of complaint is that after satisfying the treasurer's claim, the residue of the fund was distributed pro rata among claimants of the second to the exclusion of the third class. That result was reached by holding that members of the association who had given the requisite notice of withdrawal, thereby ceased to be stockholders and became creditors to the extent of the withdrawal value of their stock as evidenced either by orders on the treasurer or by the books of the association, and consequently their claims are superior to those of their fellow stockholders who had not given the requisite notice of withdrawal. In this we think there was manifest error. While, in a qualified sense, withdrawing stockholders may be considered creditors of the association, their rights, as against those with whom they have been associated, are very different from those of general creditors whose claims are based wholly on outside transactions. If the association has been prosperous, they have a right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund, but if bad investments have been made or losses have been sustained before actual withdrawal, they must bear their just proportion thereof. That right, as was held in *United States Building and Loan Association v. Silverman,* 4 Norris 394, may be enforced by appropriate proceedings at law. But, the right of withdrawal and the extent to which it may be exercised presupposes that at least a relative proportion of the assets will remain for the benefit of those who continue to be active members of the association. When a building association has failed to fulfill the object of its creation and has become hopelessly insolvent, it cannot be justly or equitably wound up on any other principle than that above suggested. After ex-

penses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed, pro rata, among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof, or not. Both classes are equally meritorious, and in marshaling the assets neither is entitled to priority over the other. The claims of each are alike based upon their relation to the association as members thereof. Orders issued to withdrawing stockholders are merely evidence of their interest in the assets remaining after paying general creditors. As was well said by the learned president of the common pleas in the *Assigned Estate of National Savings, Loan and Building Association,* 9 W. N. C. 79, such an organization is, in fact and in law, a partnership, with corporate rights, in which every stockholder is a member; and while it may be true that a stockholder may recover judgment against the corporation, and thus become, in a certain sense, a creditor thereof, he is nevertheless not a creditor within the meaning of our assignment laws."

This is very strong language, and if it applied to all cases it would rule this appeal against the appellant. But the foregoing quotation is almost immediately succeeded by the following: "It may be observed that claimants of the second class [withdrawing stockholders] should not be required to share losses resulting from bad investments made after they withdrew from the association as active members thereof; but it does not appear that any such investments were made after they gave notice of their intention to withdraw. On the contrary it appears that the injudicious investments, which afterwards developed and that in the end resulted in heavy losses and consequent bankruptcy, were made before."

It is this exception which, we think, requires a different ruling in this case.

This distinction was recognized by the present Chief Justice in *Stone v. Schiller B. & L. Assn.*, 302 Pa. 544, 153 A. 758, the opinion in which case is a compendium of the present law on building and loan associations in this State; for after referring at length to *Christian's Appeal*, supra, and the equality which exists among all classes of stockholders in an insolvent association, Justice KEPHART went on to say (p. 554), "A withdrawing stockholder is not obliged to share losses after a notice of withdrawal has been given to a solvent corporation; it is otherwise if the association is insolvent when the notice is given." This can only mean that if an association is solvent when a stockholder gives notice of withdrawal of his stock, which is accepted and approved by the association, and subsequently the association becomes insolvent because of losses incurred after he has withdrawn and has had no part in its management, he is entitled to a preference over the stockholders who, by their representatives, are responsible for the losses which brought about the insolvency of the association. Even in a partnership, to which a building and loan association has been likened, if one partner withdraws from the firm, but for lack of ready money is not paid off in full, and subsequently to such withdrawal the firm suffers losses which impair the capital, the partner who withdrew prior to such losses is entitled to a preference over the remaining partners on distribution of the assets of the partnership.

The difficulty with some lawyers is that in considering an opinion of a court they take an excerpt from it out of the setting of facts where it is a correct and harmonious statement of the law and attempt to apply it to wholly different facts, which are not applicable to it, or are even expressly excepted from its operation, as in *Christian's Appeal*, supra. The cases of this court and of the Supreme Court, relied upon by the appellee to support the proposition that a withdrawing stockholder secures no preference over non-withdrawing

stockholders in an insolvent building and loan association, were all cases where the association was actually insolvent when notice of withdrawal was given or became insolvent because of losses from investments made before such withdrawal; and such insolvency was expressly proved or admitted or followed so closely after the notice of withdrawal as to be reasonably inferable therefrom.

But this case does not come within either of those categories. Here, nearly five years elapsed between the notice of withdrawal and the insolvency of the association. In the meantime, as a going association, it may be presumed that new series of stock were issued and matured series of stock were paid off; that new loans were made, and mortgage loans paid by maturing stock were satisfied, and that withdrawing stockholders whose notices antedated this appellant were paid off, just as this appellant herself received $300 on account. The association, while this was going on, undoubtedly thought itself solvent, but if it was in fact insolvent during all this period, then it was the duty of the Secretary of Banking on taking charge of its affairs as receiver to proceed in equity against those stockholders and mortgage borrowers, who, by such mistake, had received a preference to which they were not entitled. See *Kurtz v. Bubeck*, 39 Pa. Superior Ct. 370; *Callahan's App.*, 124 Pa. 138, 16 A. 638; *Sperling v. Euclid B. & L. Assn.*, 308 Pa. 143, 147, 148, 162 A. 201. No such action going back five years seems to have been taken by the Secretary. If the association was actually insolvent in 1930, when this appellant gave notice of the withdrawal of her stock and the association accepted and approved and subsequently acted upon it, then the burden was on the association and on its receiver, the Secretary of Banking, acting for it, to show it. This was decided in *U. S. Building & Loan Assn. v. Silverman*, 85 Pa. 394, 396, 397, where Mr. Justice GORDON, speaking for the

Court said: "Had the affidavit of defense filed in this case set forth losses incurred by the association, whether resulting from the depreciation of its property or otherwise, occurring before the time of the plaintiff's withdrawal, no doubt a proper set-off to the claim in suit would have been exhibited; herein, however, is the material defect in that it does not state that such losses did happen before the withdrawal. On trial, without such showing, the defense would clearly amount to nothing, for the plaintiff could not be charged with losses which occurred after he ceased to be a member of the company, and we must take it for granted that what a defendant cannot state in his affidavit of defense he cannot prove in court."

It is but reasonable that this should be so, for the books of the association from which its solvency or insolvency at a given date might be determined, are in the possession, custody and control of the association and its receiver, and not of the individual withdrawing stockholders. When the appellant sued the association to recover the unpaid withdrawal value of her stock, the association did not set up its insolvency as a defense to the action, as it might have done, if it were actually insolvent when her notice of withdrawal was given. While this fact did not conclude the Secretary of Banking, on taking over the affairs of the association, it was sufficient to put on him the burden of proving the actual insolvency of the association in August, 1930, if he disputed the preference of the appellant over non-withdrawing stockholders, rather than to require her to prove its solvency at that time.

Our holding in this case makes no new or uncharted law. It is but the application of former expressions of the Supreme Court and this Court to facts warranting such application. It is in line with the clear expressions of the appellate courts, recognized by the appellee, relative to the rights of withdrawing stockholders of a constituent building and loan association

against a merged or consolidated association, which they have refused to become members of. See *Weinroth v. Homer B. & L. Assn.*, 310 Pa. 265, 165 A. 28; *Educational Society of Yozgad v. Gordon,* 310 Pa. 470, 166 A. 499; *Nice Ball Bearing Co. v. Mortgage B. & L. Assn.,* 310 Pa. 560, 166 A. 239; *Sharps v. Homer B. & L. Assn.,* 111 Pa. Superior Ct. 556, 170 A. 353; *Oechsle v. Lodge B. & L. Assn.,* 119 Pa. Superior Ct. 597, 181 A. 375.

It is well settled by the decisions that if the association had been actually insolvent when appellant gave notice of the withdrawal of her stock, her subsequent judgment against the association would give her no advantage over other stockholders. Nor does it give her any advantage over other withdrawing stockholders, if there are any, who occupy a like or equal position with her, that is, who withdrew their stock while it was solvent: *Sharps v. Homer B. & L. Assn.,* supra, pp. 560, 561.

The first, second, third and sixth assignments of error are sustained. The decree is reversed and the record is remitted to the court below for further proceedings consistent with this opinion. Costs to be paid out of the fund to be distributed.