## In re Eminent-East Logan Building & Loan Association

*John A. Mawhinney, Harry M. McCaughey,* and *John W. Speckman,* for exceptants.

*Herbert P. Sundheim,* contra.

LAMBERTON, J., January 17, 1939.—The Secretary of Banking took possession of the Eminent-East Logan Building & Loan Association (hereinafter called the "Merged Association") on December 4, 1936. On June 2, 1938, the Secretary filed his first and partial account, to which numerous exceptions were filed. The account came up for audit on September 26, 1938, and subsequent days. Testimony was taken in court and by depositions.

Until September 1932, there were four separate building and loan associations, namely, Eminent Building & Loan Association (hereinafter called "Eminent Association"), East Logan Building & Loan Association (hereinafter called "East Logan Association"), Safety First Building & Loan Association (hereinafter called "Safety First Association"), and Kensington Beaver Building & Loan Association (hereinafter called "Kensington Association"). Proceedings for the merger of these four associations were started in February 1932. A merger agreement was executed on May 13, 1932, and the merger was completed on September 2, 1932, by the issuance of a charter to the Merged Association. The records show that each of the four constituent associations was insolvent before the merger, and in the merger the paid-in value of the shares of stock in each constituent association was written down by 40 percent.

Several of the exceptions fall naturally under one heading and will be discussed as a group. We will first give the facts in each case.

1. Emma Shields. In the years 1925, 1927, and 1930, the East Logan Association issued to Emma Shields certificates for 18½ shares of its full-paid stock of the aggregate par value of $3,700. On January 15, 1932, claimant surrendered these certificates to the East Logan Association and received in exchange therefor the note of said association in the sum of $3,700, payable one day after date. This transaction was immediately placed upon the books of the East Logan Association, and claimant appears on the books of the Merged Association only as a creditor. After the merger, payments were made to her aggregating $2,200, and she now claims a creditor's status for the balance, to wit, $1,500.

2. Margaret Willahan. On July 25, 1927, the East Logan Association issued to Margaret Willahan a certificate for 10 shares of its full-paid stock of the aggregate par value of $2,000. On January 15, 1932, claimant surrendered said certificate to the East Logan Association and received in exchange therefor the note of said association in the sum of $2,000, payable one day after date. This transaction was immediately placed upon the books of the East Logan Association and claimant appears on the books of the Merged Association only as a creditor. Margaret Willahan claims the status of a creditor in the sum of $2,000.

3. Mary L. Neuman. On December 4, 1924, the East Logan Association issued to Mary L. Neuman a certificate for six shares of its full-paid stock of the aggregate par value of $1,200. On January 15, 1932, claimant surrendered said certificate to the East Logan Association and received in exchange therefor the note of said association in the sum of $1,200, payable one day after date. This transaction was immediately placed upon the books of the East Logan Association and claimant appears on the books of the Merged Association only as a creditor. Mary L. Neuman claims the status of a creditor in the sum of $1,200.

4. Franklin Friedrich. On October 10, 1929, the East Logan Association issued to Franklin Friedrich a certificate for 4½ shares of its full-paid stock of the aggregate par value of $900. On January 15, 1932, claimant surrendered said certificate to the East Logan Association and received in exchange therefor the note of said association in the sum of $900, payable one day after date. This transaction was immediately placed upon the books of the East Logan Association and claimant appears on the books of the Merged Association only as a creditor. Subsequent to the merger, claimant received $200 on account. He now claims the status of a creditor in the sum of $700.

5. Edward Friedrich and Franklin Friedrich, assignees of Harvey Friedrich. On October 1, 1929, the Safety First Association issued to Harvey Friedrich a certificate for six shares of its full-paid stock of the aggregate par value of $1,200. On October 7, 1931, the Safety First Association issued to Harvey Friedrich its check in the sum of $1,200 in cancellation of said stock. Harvey Friedrich endorsed said check back to the Safety First Association and received therefor the note of said association in the sum of $1,200. After the merger payments were made on account aggregating $200, claimants ask that they be accorded the status of creditors in the sum of $1,000.

6. Edward Friedrich. On July 28, 1919, the Eminent Association issued to Edward Friedrich a certificate for six shares of its full-paid stock of the aggregate par value of $1,200. On August 18, 1932, the Eminent Association issued to claimant its check in the amount of $1,200 in cancellation of said stock. Claimant endorsed said check back to the Eminent Association and received therefor the note of said association in the sum of $1,200. Subsequent to the merger, there was a payment on account in the amount of $840. Claimant asks that he be accorded a creditor status in the amount of $360.

7. R. N. Davis. On February 13, 1930, the East Logan Association issued to R. N. Davis a certificate for 10 shares of its full-paid stock of the aggregate par value of $2,000. On February 13, 1932, claimant surrendered said certificate to the East Logan Association and received in exchange therefor the note of said association in the sum of $2,000, payable one day after date. This transaction was immediately placed upon the books of the East Logan Association and claimant appears on the books of the Merged Association only as a creditor. R. N. Davis claims the status of a creditor in the sum of $2,000.

8. J. Jacob and Catherine E. Weber. On August 1, 1929, the Eminent Association issued to claimants a certificate for 10 shares of its full-paid stock of the aggregate par value of $2,000. On August 18, 1932, the Eminent Association issued to claimants its check in the sum of $2,000 in cancellation of said stock. Claimants endorsed said check back to the Eminent Association and received therefor the note of said association in the sum of $2,000. Claimants ask that they be accorded the status of creditors in the sum of $2,000.

The Secretary of Banking contends that said exchanges were void, that claimants continued to be stockholders of the 'constituent associations until the merger, and that each claim should be written down by 40 percent as the result of the merger.

The evidence in regard to these eight claims differs as to details. In some cases money was originally paid in for full-paid stock, in others money was originally loaned and later transferred into full-paid stock, and in at least one case the money for which the full-paid stock was issued was derived from the maturity of other stock. In some cases, claimants admitted knowing that they had full-paid stock, while in other cases they claim that they at all times thought that they had loaned money and they were not aware that full-paid stock had been issued to them. In one case, claimant identifies his signature to a

subscription to full-paid stock and in two or three cases the signature on the stub showing the receipt of the certificate for the full-paid stock are admitted. We do not believe, however, that these differences in detail bring about any difference in result. It may be that in the minds of some of the claimants the distinction between a certificate for full-paid stock and a note for money loaned is rather hazy. But the full-paid stock, without exception, was outstanding for a considerable period of time, in some cases for several years, and we are convinced that in no case was fraud practiced upon a claimant. We, therefore, find as a fact that in all the above cases claimants were in fact and in law stockholders of the respective constituent associations, and nothing more, prior to receiving the notes on which they are now basing their claims. We also find as a fact, from the evidence submitted, that each of said constituent associations was insolvent at the time when said certificates for full-paid stock were surrendered and the notes of said constituent associations were issued in exchange therefor.

We consider the exchange of full-paid stock for a promissory note as being in reality the withdrawal of the stock and the loan of the proceeds. It is fundamental law that a stockholder has no right to withdraw from an insolvent building and loan association: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544; Christian's Appeal, 102 Pa. 184. It is likewise fundamental law that no stockholder of an insolvent association will be permitted to gain a preference over other stockholders, no matter what the method pursued: Educational Society of Yozgad, Inc., v. Gordon, etc., 310 Pa. 470; Weinroth, Executrix, v. Homer B. & L. Assn., 310 Pa. 265; Sanft v. Fair & Square B. & L. Assn., 111 Pa. Superior Ct. 333; Publicker et al. v. Pottash Brothers B. & L. Assn., 104 Pa. Superior Ct. 530. Claimants have, in effect, been permitted to withdraw from insolvent associations and thereby to gain a preference over their fellow - stockholders. Such a proceeding involves a legal fraud which

this court will not countenance. The exchanges were void, and claimants continued to be stockholders until the time of the merger. Since claimants thought they were creditors they did not vote at the merger meeting and were therefore nonassenting stockholders.

Claimants contend that since they were listed as creditors in the reports of the constituent associations forming the basis of the merger, they are creditors by estoppel if not creditors in fact. The elements of estoppel are not present in these cases.

"Where a person has . . . acted . . . in a particular manner . . . he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations": 21 C. J. 1202 §205. "The purpose of estoppels is to prevent inconsistency and fraud resulting in injustice": 21 C. J. 1060 §1.

A decision based upon the real facts in this case does not prejudice the rights of claimants or result in injustice to them, but a disregard of those facts, on the basis of estoppel, would result in grave injustice to the other stockholders.

It might be argued that claimants should be given the same status as assenting stockholders, because they did not commence suit against the Merged Association within six months after the effective date of the Act of May 15, 1933, P. L. 794. We do not think the provisions of the act can, with justice, be applied to persons in the position of claimants, for until the present moment claimants have believed themselves to be creditors and not stockholders, and they have been encouraged in this belief by the actions of both the constituent and the merged associations. They are not now claiming and never have claimed the status of nonassenting stockholders, but are being given that status by the court against their wills.

We understand that counsel for the Secretary of Banking contends that the order of distribution in this case

is governed by section 1011(b) of the Department of Banking Code of May 15, 1933, P. L. 565, and that thereunder assenting and nonassenting stockholders are on an equality. Suffice it to say that the rights of claimants as nonassenting stockholders became fixed on the date of the merger and could not be altered by subsequent legislation: Treigle v. Acme Homestead Assn., 297 U. S. 189.

We, therefore, hold that the above claimants, as nonassenting stockholders, are entitled to 60 percent of the amount paid in by them to the respective constituent associations and no more. Whether or not these claimants, as nonassenting stockholders, are on a parity with the creditors of the Merged Association, as we decided in the case of the Mortgage Building & Loan Association, or whether they are in a class by themselves coming after all creditors but ahead of assenting stockholders, we need not decide, because the assets and liabilities of the Merged Association are such that this distinction will make no difference. It is sufficient to say that they are entitled to 60 percent of the amount paid in, and that they are ahead of assenting stockholders. . . .

## Decree nisi

And now, to wit, January 17, 1939, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. The exceptions of Emma Shields, Margaret Willahan, Mary L. Neuman, Franklin Friedrich, Edward Friedrich and Franklin Friedrich, assignees of Harvey Friedrich, Edward Friedrich, R. N. Davis, and J. Jacob and Catherine E. Weber, are sustained to the extent that said exceptants are awarded the status of nonassenting stockholders in the amount of 60 percent of the par value of the full-paid stock held by said exceptants in the respective constituent associations prior to the attempted exchange thereof for notes of said associations, less, in each case, any amounts paid to said exceptants subsequent to the merger, the claims of said exceptants fixed as

684

above to be prior in payment to claims of assenting stock-holders. Except as above stated, the exceptions of said claimants are dismissed.