## In re Suburban Building & Loan Association of Highland Park

*John J. Stetser*, for Secretary of Banking.
*William R. Toal*, for exceptant.

BROOMALL, J., March 10, 1939.—The first and partial account of the Secretary of Banking in the above matter was filed on June 7, 1938, to which Howard R. Broadbelt has filed exceptions. Testimony was taken and argument thereon was before the court in banc.

The transaction involved by the exceptions occurred prior to the effective date (July 3, 1933) of the Building and Loan Code of May 5, 1933, P. L. 457, 15 PS §1074-

1301 et seq. and while The Banking Act of June 15, 1923, P. L. 809, was in effect. It is agreed that the association was solvent at the time. The case must therefore be decided on the state of the law as it existed prior to the Building and Loan Code, supra: Yonah Building & Loan Association Case, 133 Pa. Superior Ct. 376, 379.

By letter to the association dated February 20, 1932, the Secretary of Banking, inter alia, "instructed [it] to make no payment on account of withdrawals or maturities, grant no mortgage loans until further notice from the department. Your directors may at their discretion grant stock loans up to 50 percent of the paid in value." At that time exceptant owned certain shares in the association which were pledged to it to secure the payment of a loan. In October 1932 the loan with interest was liquidated by cancellation of the stock and the excess over the amount due on the loan was used by exceptant to purchase new shares in the association. The old shares were canceled and a book issued for the new shares. The whole transaction as noted was closed on the books of the association.[1]

On October 19, 1936, the Secretary of Banking took possession of the association, and in filing his first and partial account, which is before us, has restated the transaction to its original status immediately before the cancellation of the collateral shares, payment of the loan and issuing of the new shares. Under section 4 of the Act of April 10, 1879, P. L. 16, as amended by the Act of April 30, 1929, P. L. 901 (repealed by the Building and Loan Code, supra), a borrower from a building and loan association may repay a loan at any time, if before maturity there shall be refunded a portion of the profits, also receive the withdrawal value of the shares pledged, and the shares shall revert back to the association. No notice of withdrawal was required. Exceptant had a legal right under this section to pay off his loan at any time and receive the withdrawal value of the pledged

shares, if the association was solvent, which is conceded: Orient B. & L. Assn. v. Freud, 298 Pa. 431, 436.

The Secretary of Banking contends that he had the legal right to restate the account, that his letter of February 20, 1932, amounted to a segregation of the assets of the association and is a bar to the action of the association taken thereafter. Assuming, for the purpose of this case, the right of the secretary to restate the account, although not approving it, we find the question raised as to the effect of the letter of the secretary fully discussed, under facts similar to those in the instant case, by Brown, J., in Blattenberger v. Sharswood B. & L. Assn., 19 D. & C. 447, where he said at page 449:

"Section 20 of The Banking Act of June 15, 1923, P. L. 809, provided that 'Whenever it shall appear to the secretary that any corporation . . . is conducting business in an . . . unsafe manner, or that any such corporation has an impairment of capital, the secretary may issue an order, under his hand and seal of office, directing such corporation . . . to discontinue . . . such unauthorized or unsafe practices, or directing such corporation to make good, within a time of not more than sixty days after notice by the secretary, any impairment or deficiency of capital'. The letters from the secretary above referred to were not under his 'seal of office'. Indeed, they were not signed by him but by the assistant supervisor. They were not orders but merely requests. The defendant was not directed 'to make good . . . any impairment or deficiency of capital'. True, that of April 8, 1933, states that 'within sixty days you are to submit to this office a plan for rehabilitation of your affairs', but submitting such a plan is not making good an 'impairment or deficiency of capital'. The letters referred to no 'unauthorized or unsafe practices', but to the regular and proper acts of a building and loan association in the conduct of its business. Upon these the secretary was attempting to place 'temporary restrictions'. Under section 808 of the Build-

ing and Loan Code of May 5, 1933, P. L. 457, he now may do so by issuing an 'order of segregation', but no such authority was vested in him prior to July 3, 1933, when that act became effective. It is therefore apparent that the letters had no legal significance, and that defendant should have credited plaintiff's payments on account of his shares of stock to the cancellation of his loan."

In the instant case the letter to the association was not under the seal of the office, it was signed by the Secretary of Banking and it instructed the officers not to do certain things. There was no order to make good any impairment or deficiency to its capital. The association was instructed to make no payments on account of withdrawals and grant no mortgage loans, but were permitted to grant stock loans up to 50 percent of the paid in value. What the association and exceptant did here was not contrary to these instructions. No payment was made on account of a withdrawal. There was simply a resetting of the account of exceptant by which the value of his old shares was used to cancel his loan and the balance remained in the association credited to new shares of stock.

From the facts we are satisfied that the transaction was fully consummated under the law in force at that time and that it was neither unlawful or contrary to the letters of instructions.

And now, to wit, March 10, 1939, the exceptions are sustained and the Secretary of Banking as receiver is hereby directed to restate that portion of the account relating to the claim of exceptant in accordance with this opinion.

---

[1] The arithmetic of the transaction is that the withdrawal value of the collateral shares was $330, the loan with interest amounted to $201, and the difference, $129, was applied as payments on the new free shares. Subsequently exceptant paid $45 in on the new shares. Exceptant therefore was a shareholder holding shares on which $174 had been paid.