Perletto *v.* Lancaster Avenue Building & Loan Association (et al., Appellants).

Argued November 26, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*T. Henry Walnut,* for liquidating trustees, appellants.

*Ralph B. Umsted,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for Commonwealth, intervening appellant.

*Joseph F. Van Horn,* with him *Frank W. Melvin,* for plaintiff, appellee.

OPINION BY MR. JUSTICE PATTERSON, January 7, 1946:

This is an action in assumpsit against Lancaster Avenue Building and Loan Association, now in possession of Fred W. Killian, Jonathan T. Rorer and Samuel W. Harrison, as Liquidating Trustees, appellants in Appeal No. 170, by Nicola Perletto, appellee, to recover the balance of money due him as a withdrawn shareholder, notice of withdrawal having been given at a time when the appellant-association was alleged to have been solvent and had, on the effective date of the withdrawal, funds sufficient to lawfully pay in full the amounts due

appellee and all prior withdrawn shareholders. The case was tried by a judge without a jury. He found in favor of appellee. The court *en banc* dismissed appellant's motions for judgment *non obstante veredicto* and for a new trial. Upon appeal to the Superior Court the judgment of the court below was affirmed. The Commonwealth of Pennsylvania, appellant in Appeal No. 171, petitioned the Superior Court for leave to intervene and for a reargument. The intervention was allowed, but reargument was refused. This Court allowed appeals.

In January, 1929, Nicola Perletto, appellee, subscribed for five double shares of installment stock in the Lancaster Avenue Building and Loan Association. Monthly dues of $10 were paid thereon until October 15, 1931, when notice of the withdrawal of said stock was given to the association. The stock at that time had a value of $241.88. Said withdrawal notice was accepted and approved by the said association and acknowledged by its secretary. The shares were marked withdrawn on the appellant's books and records and placed on the withdrawn list. Upon the effective date of said withdrawal notice—thirty days subsequent to its acceptance—the total amount necessary to pay all withdrawals to and including appellee was $14,437.47. On July 24, 1940, Perletto instituted this action to recover $176.82, the balance allegedly due him after having given credit for dividends received from the association.

Appellee's statement of claim averred that the association was solvent on the effective date of his withdrawal notice, and that then and subsequent thereto appellant had sufficient funds to pay his claim and those of the prior withdrawn stockholders in full. These allegations were denied in an affidavit of defense. The trial judge found that at the time notice of withdrawal was given the "Association was solvent, and that for a period of thirty days after the notice of withdrawal was given and for some time thereafter there were sufficient funds in the treasury of the association, not only to meet his

demands, but the demands of prior withdrawn stockholders . . .". Appellee introduced in evidence admittedly correct copies of the reports filed by the association with the Department of Banking for the years 1931 to 1936, inclusive. These reports set forth the assets, liabilities, receipts, and disbursements. The report for the year ending March 16, 1932, carried an item entitled "Earnings due shareholders in the amount of $34,835.28." The association alleged, however, that these figures did not represent a true picture of its financial condition for the reason that the stated values of certain assets were in excess of the actual or market value. No proof, however, was introduced to establish the true value although the trial judge requested the same. Appellants rely upon a letter dated January 29, 1932, from the Secretary of Banking to the association instructing them to pay no withdrawals or maturities until further notice. This letter, however, resulted from a special investigation and examination made by the Department "because of alleged irregularities in another association, of which the Secretary of this Association had formerly been connected." The examiner's report contained no intimation that the association was insolvent. It merely suggested errors due to apparent carelessness.

In May, 1934, the banking department issued a segregation order pursuant to the provisions of section 808 of the Building and Loan Code of 1933, P. L. 457, as amended, 15 P.S. section 1074-808. Subsequent thereto payments in the nature of dividends of five percent were made in 1934 and 1935. Appellee's dividends were based upon his claim as a withdrawn shareholder. In the latter part of 1936, with the approval of the banking department, the association began voluntary liquidation. Further dividend payments were made in 1937, 1938, 1939, and 1940. These latter payments to appellee were made on the same basis as before liquidation began, clearly treating appellee as a withdrawn stockholder.

Appellants contend (1) that plaintiff failed to establish solvency as of the effective date of his withdrawal,

(2) that he did not prove availability of funds to pay him in the order of his withdrawal, and (3) that, having signed a proxy to participate in the voluntary liquidating proceedings, he is estopped from asserting his status as a withdrawn shareholder.

Findings of fact by a judge without a jury, approved by the court *en banc,* have the force and effect of a verdict of a jury if there is evidence to support them: *Genetti v. Genetti,* 351 Pa. 169, 40 A. 2d 413. The evidence here is sufficient to support the findings of fact by the trial judge. Appellee's notice of withdrawal was given prior to the Act of 1933, P. L. 565. Rights arising by reason of said withdrawal must, therefore, be determined by the law then in force: *Yonah Building & Loan Assn. Case,* 133 Pa. Superior Ct. 376, 3 A. 2d 49. See Act of 1874, P. L. 73, section 37, cl. 2, 15 P.S., section 991,[1] and Act of 1879, P. L. 16, section 2, 15 P.S., section 992.[2]

The burden of proving solvency of appellant association and the existence of funds legally applicable to the payment of his claim after the effective date of his withdrawal notice was with appellee: *Meth v. Broad Street & Bonded B. & L. Assn.,* 346 Pa. 331, 333, 30 A. 2d 119, 120; *Brown v. Victor Building Association,*

---

[1] "And any stockholder wishing to withdraw from the said corporation, shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount, paid in by him or her, less all fines and other charges; . . . Provided, that at no time shall more than one-half of the.funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors": Act of 1874, P. L. 73, section 37.

[2] "Payment of the value of stock so withdrawn, shall only be due when the funds now by law applicable to the demand of withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notices of such withdrawals, which must be presented in writing at a previous stated meeting, and have been then and there endorsed as to times of presentation by the officer designated by the by-laws of the association": Act of 1879, P. L. 16, section 2.

302 Pa. 254, 256, 153 A. 349, 350. "Insolvency, actual or potential, is incompatible with the right to withdraw": *Stone v. Schiller B. & L. Assn.,* 302 Pa. 544, 552, 153 A. 758 at 760. "A building and loan association is insolvent only when all of its assets are insufficient to meet the claims of its general creditors and to repay to its share- holders the amount of their contributions": *Homeseek- ers Building Association Case,* 339 Pa. 445, 448, 15 A. 2d 350, 352. The burden of proving actual insolvency was upon appellant: *Yonah B. & L. Assn. Case,* supra, 385, 3 A. 2d at 53.

The record clearly shows that appellant has not sus- tained the burden of proving insolvency, either at the time of the effective date of the withdrawal or within a reasonable time thereafter, or at any other time. On the contrary, all the financial reports submitted to the Department of Banking establish solvency. The only attempt to prove insolvency was by an attack upon the report for the year ending March 16, 1932. William Sharrocks, an expert witness, testified that even though $18,000 were deducted as over-inflated assets, the report would nevertheless show a profit of $16,000. Although the trial judge suggested that appellant produce wit- nesses who could testify regarding the value of the real estate and show the over-assessment placed thereon, and thus challenge the accuracy of figures set forth in its annual reports to the department, none were produced.

Appellee, to prove the existence of funds which could legally be applied to the payment of his claim, relied upon the aforementioned reports. He also established that during 1934 there was paid to all shareholders a dividend of five percent, amounting to $14,800. The find- ing of the trial judge that there were sufficient funds available for the lawful payment of appellee's claim is not without evidentiary support.

A segregation order was made by the Department of Banking on May 17, 1934. Subsequent thereto, however, payments were made in the nature of dividends in Oc-

tober, 1934, and July, 1935. After voluntary liquidation proceedings were begun in 1936, further payments were made in 1937, 1938, 1939, and 1940. Throughout this entire period appellee was treated as a withdrawn shareholder. Dividends paid to him were based, not on the original amount of his claim, but on the reduced principal.

Appellee's status as a withdrawn shareholder creditor was recognized as such throughout the entire period, notwithstanding the proxy executed by him to vote at the meeting at which the decision was made to liquidate. The issue of estoppel raised by appellant is based upon facts ignored by it throughout 1936 to 1940. Having continued to recognize appellee as a shareholder creditor, it cannot now urge that the relationship did not continue to exist.

Appellants' contention that the rule that a withdrawn stockholder can secure no preference over non-withdrawing stockholders where the association is insolvent at the time of the notice of withdrawal or subsequently becomes insolvent and there have been no new investments by the association *(Yonah Building & Loan Association Case,* supra, 383, 3 A. 2d at 52; *Commuters Building & Loan Association Case,* 134 Pa. Superior Ct. 520, 523, 4 A. 2d 615, 616; *Stone v. Schiller B. & L.,* supra, 554, 153 A. at 761) is inapplicable here for the reason that no insolvency has been proven. Liquidation was voluntary and was not forced upon appellant by any action of the Banking Department.

The Superior Court properly concluded that appellee's "superior right, in view of the fact that no evidence was presented to show that defendant association at any time was or is insolvent, is clear without doubt."

Appellants' suggestion that the court below was without jurisdiction to hear the matter is entirely without merit.

The judgment of the Superior Court is affirmed.